Present: Hassell, C.J., Koontz, Kinser, Lemons, Goodwyn, and Millette, JJ., and Carrico, S.J.

JAMES PERRY
v.  Record No. 092418      OPINION BY JUSTICE DONALD W. LEMONS
                                         November 4, 2010
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether the Court of Appeals erred when it affirmed the trial court's denial of James Edward Perry's ("Perry") motion to suppress and his conviction for possession of phencyclidine ("PCP").

## I.   Facts and Proceedings Below

At approximately 2:00 a.m. on the morning of October 15, 2006, Trooper Clinton A. Weidhaas ("Trooper Weidhaas") was traveling on Interstate 66 in Arlington County when he noticed a vehicle with its emergency flashers activated parked on a "pretty well lit" area of the right shoulder.  With the intention of assisting the occupants, Trooper Weidhaas pulled off the interstate with his emergency equipment activated, and he exited and approached the vehicle.

Upon reaching the vehicle, Trooper Weidhaas observed that all four windows and the sunroof were open, and he "detected a strong odor of marijuana coming from that vehicle."  The vehicle had three occupants:  Valdemere Perry ("Valdemere") was the driver of the vehicle, Maurice Sprurgeon ("Sprurgeon") was the front-seat passenger, and Perry was in the back seat.

Upon checking Valdemere's driving record, Trooper Weidhaas discovered that Valdemere's license was suspended. Trooper Weidhaas called for a back-up unit; this second trooper watched Valdemere from behind the vehicle. Sometime thereafter, Trooper Weidhaas approached Sprurgeon, whose demeanor Trooper Weidhaas described as "visibly impaired." "He wasn't very responsive" to questions, he was "somewhat slow [and] slow to react," "unsteady, [and he] had a hard time keeping his balance." Trooper Weidhaas initially suspected that Sprurgeon was "under the influence of something, either marijuana or something stronger, [such as] PCP, because he was definitely not coherent."

Trooper Weidhaas asked Sprurgeon to exit the vehicle. As he did, Trooper Weidhaas saw "a small vial with an orange-reddish cap come out of [Sprurgeon's] right hand in a throwing motion, onto the ground." Upon hitting the ground the cap came off, and Trooper Weidhaas observed "a dark plant-like material" that appeared as if it "had been soaked in something." Trooper Weidhaas expressed his concern that there were only two troopers present at the scene, while "[t]here [were] three of them." He expressed particular concern that "[t]hey could overpower the officer and all the weapons that we have to defend ourselves may not work on some [people under the influence] of these certain types of drugs [such] as PCP." He

2

further indicated a concern that these suspects, if under the influence of such substances, would "have no pain whatsoever" and "can go from being at a low to a high, high strung, in a matter of minutes." While unable to recall the exact time of arrival, Trooper Weidhaas testified that a third trooper arrived sometime during or after his interaction with Sprurgeon.

Trooper Weidhaas placed Sprurgeon under arrest "for possession of a controlled substance." When asked whether he had "smoked anything tonight," Sprurgeon admitted that he had "smoked some PCP earlier." A field test of the substance in the vial recovered from Sprurgeon returned positive results for both PCP and marijuana.

Finally, Trooper Weidhaas approached Perry, whose demeanor he described as "exactly like Sprurgeon's." Perry was "[s]low to respond," "[n]ot very coherent," and "[u]nsteady when I got him out of the car." Once Perry was out of the vehicle, Trooper Weidhaas "got him up to the front of the car and did a patdown for weapons." When performing a pat-down on suspects, Trooper Weidhaas stated that he "squeeze[s] their pockets as well."

In Perry's front pocket, Trooper Weidhaas detected "a bundle," which he described as a "bulge" that had the "same size, same round feeling, [and] same length as the vial that

3

was previously thrown on the ground [by Sprurgeon]." On cross examination, Trooper Weidhaas testified that he detected the bulge in Perry's pocket "between [his] thumb and . . . index finger," and he felt it "[s]omewhere between two and three" times.

Trooper Weidhaas then asked Perry, "[w]ould you mind showing what's in your pockets," and Perry "took his right hand, reached down in his pocket" and produced "the same type [of] vial." When asked about the vial's contents, Perry responded that it contained marijuana. Perry also admitted to smoking PCP earlier that night. Trooper Weidhaas then placed Perry under arrest.

Prior to his trial for possession of PCP in violation of Code § 18.2-250, Perry filed a motion to suppress. Perry claimed his rights under the United States and Virginia Constitutions were violated because (i) "[t]here existed no reasonable articulable suspicion or otherwise lawful cause to frisk," and (ii) "[t]here existed no probable cause or otherwise lawful cause justifying the search and seizure of the property." Perry argued that as a result, "[a]ll evidence obtained by law enforcement subsequent to, or as a result of, such improper action [were] inadmissible 'fruit of the poisonous tree' and must be suppressed."

In support of his motion to suppress, Perry argued that Trooper Weidhaas "did not have a reasonable basis to believe that [Perry] was armed and dangerous. And therefore, the Terry frisk of James Perry was unlawful." Perry also argued that, assuming the pat-down search was lawful, "Trooper Weidhaas exceeded . . . the permissible scope" of the pat-down by manipulating the contents of Perry's pocket with his thumb and fingers.

The Commonwealth responded that "suspicion of narcotics possession gives rise . . . to an inference of dangerousness, . . . which makes a Terry search under those circumstances appropriate." The Commonwealth then argued that Trooper Weidhaas "had probable cause to believe that the items that he felt and that he brushed up against did contain contraband." As a result, the Commonwealth argued that Trooper Weidhaas "had probable cause to go into [Perry's] pocket."

The trial court observed that this was "a very close case," but denied Perry's motion to suppress. At his trial, a jury found Perry guilty of possession of PCP and fixed his penalty at $2,500.

The Court of Appeals affirmed Perry's conviction. Perry v. Commonwealth, 55 Va. App. 122, 133, 684 S.E.2d, 227, 232 (2009). Applying the right result for the wrong reason doctrine, the Court of Appeals "assume[d] without deciding that

5

the trial court erred when it found [that] Trooper Weidhaas had reasonable articulable suspicion to believe [Perry] was armed and dangerous." Id. Instead, the Court of Appeals held that Trooper Weidhaas "certainly had probable cause to believe that [Perry] possessed illegal drugs--either by having joint or constructive possession of the drugs originally in Sprurgeon's hand or by having actual possession of other drugs that the officer had not yet seen." Id. at 132, 684 S.E.2d at 231. Despite the acknowledgment of the Commonwealth that it never argued to the trial court that Trooper Weidhaas had probable cause to arrest Perry, id. at 128, 684 S.E.2d at 229, the Court of Appeals held that "the parties here were aware at all stages of this case that the courts would look to the Fourth Amendment to determine if Trooper Weidhaas's actions were appropriate-- regardless of whether the question involved probable cause or reasonable articulable suspicion." Id. at 130, 684 S.E.2d at 230.

Citing this Court's holding in Whitehead v. Commonwealth, 278 Va. 105, 677 S.E.2d 265 (2009), the Court of Appeals determined that "[a]ll the facts required to consider [the Commonwealth's probable cause to arrest] legal argument were presented to the trial court and considered by it when it addressed the Fourth Amendment reasonable suspicion argument of the trial prosecutor." Perry, 55 Va. App. at 130, 684 S.E.2d

at 230.  Therefore, the Court of Appeals concluded that this case presented an appropriate situation for the application of the right result for the wrong reason doctrine.  Id. Accordingly, the Court of Appeals affirmed the trial court's denial of Perry's motion to suppress and his subsequent conviction.  Id. at 133, 684 S.E.2d at 232.

Perry timely filed his notice of appeal and we granted an appeal on the following assignments of error:

1.  The Circuit Court erred in denying Appellant's motion to suppress evidence obtained in violation of his constitutional rights.

2.  The Court of Appeals erred by considering a new justification for the illegal search, which was never presented to the trial court.

3.  The Court of Appeals erred in finding that Trooper Weidhaas had probable cause to arrest Appellant at the time of the illegal search.

II.  Analysis

A.  Standard of Review

On appeal, this Court reviews "questions of law de novo, including those situations where there is a mixed question of law and fact."  Westgate at Williamsburg Condo. Ass'n v. Philip Richardson Co., 270 Va. 566, 574, 621 S.E.2d 114, 118 (2005). See Jones v. Commonwealth, 279 Va. 521, 527, 690 S.E.2d 95, 99 (2010).  Additional well-established principles of appellate review guide this Court's analysis.

7

> We consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial. <u>Reid v. Commonwealth</u>, 256 Va. 561, 564, 506 S.E.2d 787, 789 (1998). We apply the same standard when, as here, we review the trial court's denial of the defendant's motion to suppress the evidence. <u>Ewell</u> [v. Commonwealth, 254 Va. 214, 217, 491 S.E.2d 721, 723 (1997).]

<u>Bass v. Commonwealth</u>, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000).

### B. The Right Result for the Wrong Reason Doctrine

Perry argues that the Court of Appeals erred in applying the right result for the wrong reason doctrine to hold that Trooper Weidhaas had probable cause to arrest Perry. The Commonwealth argues that our decision in <u>Whitehead</u> requires that we affirm the judgment of the Court of Appeals. We agree with the Commonwealth.

Under the right result for the wrong reason doctrine, "it is the settled rule that how[ever] erroneous . . . may be the reasons of the court for its judgment upon the face of the judgment itself, if the judgment be right, it will not be disturbed on account of the reasons." <u>Schultz v. Schultz</u>, 51 Va. (10 Gratt.) 358, 384 (1853).

In <u>Whitehead</u>, we properly embraced the correct focus of the right result for the wrong reason doctrine when we stated that cases are only proper for application of the right result

8

for the wrong reason doctrine when the evidence in the record supports the new argument on appeal, and the development of additional facts is not necessary. 278 Va. at 115, 677 S.E.2d at 270. If the record does not support the arguments made for the first time on appeal, then application of the right result for the wrong reason doctrine is inappropriate and those new arguments will not be considered.

We declined to apply the right result for the wrong reason doctrine in Whitehead because the legal methods of proof, offered for the first time before the Court of Appeals, required different presentation of facts in order to support the elements of the offense charged. Id. at 115, 677 S.E.2d at 270. Whitehead was charged with receiving stolen property--an offense for which there were several methods of proof. Id. In refusing to apply the right result for the wrong reason doctrine, we cited the Court of Appeals and explained:

> An appellate court may affirm the judgment of a trial court when it has reached the right result for the wrong reason. However, [t]he rule does not always apply. . . . [T]he proper application of this rule does not include those cases where, because the trial court has rejected the right reason or confined its decision to a specific ground, further factual resolution is needed before the right reason may be assigned to support the trial court's decision.

Whitehead, 278 Va. at 115, 677 S.E.2d at 270 (citing Harris v. Commonwealth, 39 Va. App. 670, 675-76, 576 S.E.2d 228, 231

(2003)); Blackman v. Commonwealth, 45 Va. App. 633, 642, 613 S.E.2d 460, 465 (2005) ("an appellee may argue for the first time on appeal any legal ground in support of a judgment so long as it does not require new factual determinations.") We further explained that because a conviction based upon the Commonwealth's alternative theories of guilt "is predicated upon presentation of different facts that support the elements of the offense," we found that "Whitehead was not on notice to present evidence to rebut any other method of proof possible." 278 Va. at 115-16, 677 S.E.2d at 270.

Indeed, other cases we have decided express this limited principle as well. When the trial court has reached the correct result for the wrong reason, but the record supports the right reason, "we will assign the correct reason and affirm that result." Mitchem v. Counts, 259 Va. 179, 191, 523 S.E.2d 246, 253 (2000); Chesterfield County v. Stigall, 262 Va. 697, 704, 554 S.E.2d 49, 53 (2001). Furthermore, an appellate court's "examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008). Rather, "an appellate court must consider all the evidence admitted at trial that is contained in the record." Id.

In another aspect of the Whitehead opinion, we accurately summarized our holding in Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963), when we stated:

> However, cases in which the party seeking affirmance failed to present the argument in the trial court, such that the trial court did not have an opportunity to rule on the argument, are not "proper cases" for the application of the doctrine.

Whitehead, 278 Va. at 114, 677 S.E.2d at 270. However, upon reconsideration of the case law on this matter, we are of the view that this principle, adopted from Eason, is too broad and is inconsistent with case law that followed it. Failure to make the argument before the trial court is not the proper focus of the right result for the wrong reason doctrine. Consideration of the facts in the record and whether additional factual presentation is necessary to resolve the newly-advanced reason is the proper focus of the application of the doctrine.

In this case, the facts necessary to resolve the issues of reasonable articulable suspicion for a Terry stop, reasonable articulable suspicion for a pat-down, and probable cause to arrest for possession were established in the record before the trial court. The Court of Appeals correctly held that "[a]ll the facts required to consider [the Commonwealth's] legal argument [concerning probable cause to arrest] were presented

11

to the trial court." Perry, 55 Va. App. at 130, 684 S.E.2d at 230.

Additionally, both parties were aware that Fourth Amendment search and seizure issues were before the court. The Court of Appeals held that "the parties here were aware at all stages of this case that the courts would look to the Fourth Amendment to determine if Trooper Weidhaas's actions were appropriate – regardless of whether the question involved probable cause or reasonable articulable suspicion." Id. at 130, 684 S.E.2d at 230.

The United States Supreme Court has emphasized the distinction between "reasonable articulable suspicion" and "probable cause," explaining that reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence," and "obviously less demanding than that for probable cause." United States v. Sokolow, 490 U.S. 1, 7 (1989). However, the underlying facts required to prove that Trooper Weidhaas had reasonable suspicion to stop and frisk Perry are the same as those required to consider whether he had probable cause to arrest Perry for possession. The factual record is complete; the conclusion to be drawn from these facts, namely, whether these facts support reasonable suspicion or probable cause, may be decided on this record.

12

The United States Supreme Court and the Fourth Circuit Court of Appeals both support the rule that the record must support the "right reason."  The Supreme Court has held that "the appellee [is] free to defend its judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered by the [trial court] or the Court of Appeals."  Washington v. Confederated Bands & Tribes of Yakima Indian Nation, 439 U.S. 463, 476 n.20 (1979). The Court has explained,

> it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court or an insistence upon matter overlooked or ignored by it.

United States v. American Ry. Express Co., 265 U.S. 425, 435 (1924) (emphasis added).  Similarly, the Fourth Circuit Court of Appeals has stated that "[a] prevailing party may urge an appellate court to affirm a judgment on any ground appearing in the record."  Rosenruist-Gestao E Servicos LDA v. Virgin Enters. Limited, 511 F.3d 437, 447 (4th Cir. 2007) (emphasis added) (internal quotation marks omitted).  An appellate court is not limited to the grounds offered by the trial court in support of its decision, and it is "entitled to affirm the court's judgment on alternate grounds, if such grounds are

13

apparent from the record." MM v. School District of Greenville County, 303 F.3d 523, 536 (4th Cir. 2002) (emphasis added).

Likewise, in the case before us today, we apply the right result for the wrong reason doctrine because the facts in the record establish that Trooper Weidhaas had probable cause to arrest Perry for possession of PCP before the pat-down search. Addressing the specific assignment of error, we cannot say that the Court of Appeals erred in applying the right result for the wrong reason doctrine to hold that the trooper had probable cause to arrest Perry before the pat-down search. Trooper Weidhaas noted the smell of drugs in the vehicle, verified the existence of PCP in the vial thrown on the ground, and identified Perry's behavior as being consistent with that of an individual under the influence of PCP. At that point, based on his training and experience as a police officer, Trooper Weidhaas had probable cause to believe that Perry possessed PCP. As a result, the subsequent search of Perry was a lawful search incident to arrest under the Fourth Amendment. See Chimel v. California, 395 U.S. 752, 763 (1969); see also Wright v. Commonwealth, 222 Va. 188, 193, 278 S.E.2d 849, 852-53 (1981) ("Where, as here, the product of the search was not essential to probable cause to arrest and the formal arrest followed quickly on the heels of the challenged search of [the defendant's] person, we do not believe it particularly

14

important that the search preceded the arrest rather than vice versa.") (internal quotation marks omitted).

## III. Conclusion

For the reasons stated herein, we hold that the Court of Appeals did not err in affirming the trial court's denial of Perry's motion to suppress and affirming Perry's conviction on the basis of probable cause to arrest.  Accordingly, we will affirm the judgment of the Court of Appeals.

<u>Affirmed.</u>