COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McCullough and Senior Judge Annunziata
Argued at Alexandria, Virginia


G. C. CONSTRUCTION, L.L.C. AND
  TECHNOLOGY INSURANCE COMPANY
                                                    MEMORANDUM OPINION[*] BY
v.      Record No. 1245-11-4                 JUDGE ROSEMARIE ANNUNZIATA
                                                          MARCH 6, 2012
GERSON CRUZ


                 FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

           S. Vernon Priddy III (Two Rivers Law Group, P.C., on briefs), for
           appellants.

           Andrew S. Kasmer for appellee.


       G. C. Construction, L.L.C. and Technology Insurance Company (collectively appellants)

appeal a decision of the Workers' Compensation Commission (the commission) awarding

Gerson Cruz (claimant) compensation for injuries he sustained at work.  On appeal, appellants

contend the commission erred in:  (1) finding claimant sustained a compensable injury by

accident; and (2) finding claimant made reasonable attempts to market his remaining work

capacity by working part-time at G. C. Construction.  We affirm the decision of the commission.

                                        Background

       On appeal, we view the "evidence and all reasonable inferences that may be drawn from

that evidence" in the light most favorable to the party prevailing before the commission.  Artis v.

Ottenberg's Bakers, Inc., 45 Va. App. 72, 83, 608 S.E.2d 512, 517 (2005) (en banc).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

So viewed, the evidence showed claimant worked as a site supervisor for G. C. Construction. As part of his employment, claimant inspected job sites by walking the site, climbing ladders, and walking on roofs. In February 2010, claimant was assigned to a project involving the construction of a two-story garage. Work on the project had been halted for two weeks because of snow. On February 23, 2010, claimant returned to the garage work site and discovered a leak in the ceiling. When claimant climbed onto the roof to find the source of the leak, about twenty-five feet above ground, he saw "ice, snow and water" on the roof.

No evidence contradicted claimant's description of the conditions on the roof that day. At the hearing before the deputy commissioner, claimant described his climb onto the roof, testifying, "I climbed the ladder. I went to the roof, one, two steps. I missteps, and I slipped" twenty-five feet below. When pressed to state whether he slipped or misstepped, claimant replied, "I don't know. I, I didn't look what I was walking, and I was looking around, all of a sudden, I just slip[ped]." Claimant also testified he was "looking around" to see if there "was a tree or something" through the roof.

Claimant fell to the ground, onto the snow and work debris located twenty-five feet below, injuring his pelvis, lower back, knee, and both shoulders. Claimant testified he remained conscious during the incident and he was not aware of what caused the fall other than taking a misstep or slipping. Claimant's testimony was the only evidence presented concerning the circumstances of the fall.

Claimant was treated at a hospital on February 24, 2010. He reported that "he fell off a roof onto his right side and back onto snow and construction material." Dr. Jeff E. Schulman operated on claimant's hip and treated clamant for most of 2010. On May 10, 2010, Dr. Schulman issued a work note releasing claimant to modified duty and a "sit-down" job only beginning on May 24, 2010. On June 21, 2010, Dr. Schulman issued another work note,

releasing claimant to modified duty with limited bending, stooping, climbing, stairs, kneeling, crawling, lifting, and carrying. He also restricted claimant to a "sit-down" job to two hours per day in addition to "customer visits."

On July 26, 2010, Dr. Schulman noted claimant's work status would be restricted for the next three to four-month period. Dr. Schulman also noted claimant needed time for physical therapy visits two to three times per week. Dr. Schulman referred claimant to Dr. Ronald C. Childs for his back problems.

On August 25, 2010, claimant was treated by Dr. Childs. Dr. Childs recommended epidural injections, and he issued a work note permitting claimant to return to light-duty work three days after receiving the epidural injections. He later recommended surgery. On September 22, 2010, Dr. Childs increased claimant's work day from two hours per day to four hours per day, beginning three days after he received the epidural injections. Dr. Childs also restricted claimant to light-duty work, and he continued the work restrictions to October 13, 2010. On October 13, 2010, Dr. Childs continued the light-duty work restrictions for four hours per day until November 29, 2010.

On November 29, 2010, Dr. Schulman released claimant to modified duty beginning November 29, 2010 and noted "all further restrictions defer to spine surgeon, Dr. Childs." On that same date, Dr. Childs recommended back surgery and continued claimant's modified duty restrictions. However, appellants refused to pay for the surgery.

Claimant testified he worked all the available hours approved by his treating doctors and he did not refuse any offer of light-duty work from G. C. Construction.

The deputy commissioner found claimant to be a candid and credible witness. In his summary of the evidence, the deputy commissioner stated, "The claimant testified he was not looking at his feet, but was looking for the source of the leak." The deputy commissioner found

ice, snow, and water were present on the roof and claimant slipped or misstepped on the roof causing him to fall onto the snow and construction debris twenty-five feet below. The deputy commissioner concluded "the claimant's evidence, specifically the presence of snow, water and ice on the roof which was 25 feet off the ground, was 'sufficient to support the reasonable inference that the only rationale for claimant's fall and injury was that his fall was caused by a risk or hazard unique to his workplace and not one generally available to the public,'" citing Basement Waterproofing & Drainage v. Beland, 43 Va. App. 352, 361, 597 S.E.2d 286, 290 (2004), in support of his conclusion. The deputy commissioner found claimant injured his pelvis, lower back, shoulder, and knee in the accident. He also ruled claimant did not have additional wage earning capacity and was not required to market any such capacity beyond the hours he was working for G. C. Construction. The deputy commissioner awarded claimant temporary total disability benefits, temporary partial disability benefits, and medical benefits.

Appellants appealed the deputy commissioner's decision to the full commission. The commission, by majority opinion, affirmed the deputy commissioner's decision, ruling claimant had met his burden of proof in establishing the link between the accident and his employment. The majority of the commission found:

> The claimant was not looking at his feet at the time he fell from the roof and therefore cannot say with certainty whether he slipped or misstepped on the roof. . . . [T]he accident is not unexplained . . . . [C]laimant was working on the roof and fell to the floor. Working at a height and falling from that height were risks of his employment. We believe the only logical explanation is a connection between the work activity and the resulting fall.

The majority of the commission also found claimant adequately marketed his residual work capacity.

Appellants appealed the decision of the commission to this Court.

<u>Analysis</u>

On appeal, appellants argue the accident was unexplained and the commission erred in finding claimant sustained a compensable injury.

To be compensable, an injury must be "by accident arising out of and in the course of the employment . . . ." Code § 65.2-101. Although the commission's decision that an accident arises out of employment involves a mixed question of law and fact, <u>Mullins v. Westmoreland Coal Co.</u>, 10 Va. App. 304, 307, 391 S.E.2d 609, 611 (1990), the determination of causation is a question of fact, <u>Ingersoll-Rand Co. v. Musick</u>, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989). No presumption of causation arises from an "unexplained accident" involving non-fatal injuries. <u>Hill v. S. Tank Transp., Inc.</u>, 44 Va. App. 725, 732, 607 S.E.2d 730, 733 (2005); <u>see also</u> <u>PYA/Monarch and Reliance Ins. v. Harris</u>, 22 Va. App. 215, 225, 468 S.E.2d 688, 693 (1996). Instead, a claimant must prove by a "preponderance of the evidence that an injury arose out of the employment." <u>K & G Abatement Co. v. Keil</u>, 38 Va. App. 744, 755, 568 S.E.2d 416, 421-22 (2002); <u>see</u> <u>also</u> <u>Beland</u>, 43 Va. App. at 357, 597 S.E.2d at 288 (applying "preponderance of the evidence" standard to causation). The arising-out-of phrase "refers to the origin or cause of the injury." <u>Lucas v. Fed. Express Corp.</u>, 41 Va. App. 130, 134, 583 S.E.2d 56, 58 (2003). "An injury arises out of one's employment if there is a causal connection between the injury and the 'conditions under which the work is required to be performed.'" <u>Dan River, Inc. v. Giggetts</u>, 34 Va. App. 297, 304, 541 S.E.2d 294, 297 (2001) (quoting <u>Metcalf v. A.M. Express Moving Sys., Inc.</u>, 230 Va. 464, 468, 339 S.E.2d 177, 180 (1986)).

In addition, "if an injury 'has followed as a natural incident of the work and has been a result of an exposure occasioned by the nature of the employment,' then the injury 'arises out of' the employment." <u>Marion Corr. Ctr. v. Henderson</u>, 20 Va. App. 477, 480, 458 S.E.2d 301, 303 (1995) (quoting <u>United Parcel Serv. v. Fetterman</u>, 230 Va. 257, 258, 336 S.E.2d 892, 893

- 5 -

(1985)).  Furthermore, Virginia has adopted the "actual risk" test, which """requires only that the employment expose the workman to a particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks."""  Id. (quoting Olsten v. Leftwich, 230 Va. 317, 319, 336 S.E.2d 893, 894 (1985)).

"'It is generally held that the phrase "arising out of" the employment should receive a liberal construction in order to effectuate the humane and beneficent purposes of the Act.'" Reserve Life Ins. Co. v. Hosey, 208 Va. 568, 572, 159 S.E.2d 633, 636 (1968) (quoting S. Motor Lines Co. v. Alvis, 200 Va. 168, 170-71, 104 S.E.2d 735, 738 (1958)).

In its majority opinion, the commission stated, "working at a height and falling from that height were risks of his employment.  We believe the only logical explanation is a connection between the work activity and the resulting fall."  Thus, it appears the majority of the commission found that working at a height of twenty-five feet from the ground was sufficient to show the accident arose out of claimant's employment.  We disagree with the commission's rationale.  However, we agree with the commission's award of benefits for a different reason.

"'We do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground.'"  Banks v. Commonwealth, 280 Va. 612, 617, 701 S.E.2d 437, 440 (2010) (quoting Eason v. Eason, 204 Va. 347, 352, 131 S.E.2d 280, 283 (1963)).  "Under the right result for the wrong reason doctrine, 'it is the settled rule that how[ever] erroneous . . . may be the reasons of the court for its judgment upon the face of the judgment itself, if the judgment be right, it will not be disturbed on account of the reasons.'"  Perry v. Commonwealth, 280 Va. 572, 579, 701 S.E.2d 431, 435 (2010) (quoting Schultz v. Schultz, 51 Va. (10 Gratt.) 358, 384 (1853)).

> [W]hen considering whether the "right result for the wrong reason" doctrine should be applied, the standard of review is whether the record demonstrates that all evidence necessary to the alternative ground for affirmance was before the circuit court and, if that

> evidence was conflicting, how it resolved the dispute, or weighed
> or credited contradicting testimony.

Banks, 280 Va. at 618, 701 S.E.2d at 440.

Here, the record demonstrates that all evidence necessary to the alternative ground for affirmance was before the commission and that evidence was not in conflict. "The factual record is complete; the conclusion to be drawn from these facts . . . may be decided on this record."

Perry, 280 Va. at 581, 701 S.E.2d at 436.

> Furthermore, an appellate court's "examination is not limited to the evidence mentioned by a party in trial argument or by the trial court in its ruling." Bolden v. Commonwealth, 275 Va. 144, 147, 654 S.E.2d 584, 586 (2008). Rather, "an appellate court must consider all the evidence admitted at trial that is contained in the record." Id.

Id. at 580, 701 S.E.2d at 436.

Claimant's testimony described his actions and location immediately before the fall. Claimant testified that, as part of his employment, he was required to inspect construction projects, which included walking on roofs. In order to determine the source of a leak in the ceiling of a garage under construction, claimant climbed to the top of a ladder and onto the roof, which was twenty-five feet above the ground. The evidence showed the roof had snow, ice, and water on it, the result of a snow fall two weeks earlier that was heavy enough to delay work on the project for two weeks. Claimant was conscious during the entire episode, and he testified he was not looking at his feet when he "misstep[ped] and . . . slipped." Indeed, claimant testified he was "looking around" to see if there "was a tree or something" through the roof. No other evidence was presented concerning the circumstances of the fall.[1] From the evidence presented,

---

[1] Thus, contrary to appellants' assertion, the accident was not unexplained. "Every unexplained accident, by definition, means that no one can relate how the accident happened." Pinkerton's, Inc. v. Helmes, 242 Va. 378, 381, 410 S.E.2d 646, 648 (1991). However, here, claimant fully described the circumstances leading to the fall. See Beland, 43 Va. App. at 360, 597 S.E.2d at 290 (although "claimant did not recall the specific moment of falling, he described

we infer claimant's inattention to where he was walking, due to his work duty of looking for the source of the roof leak, precipitated his fall. "An appellate court is not limited to the grounds offered by the trial court in support of its decision, and it is 'entitled to affirm the court's judgment on alternate grounds, if such grounds are apparent from the record.'" Perry, 280 Va. at 582, 701 S.E.2d at 437 (quoting MM v. Sch. Dist. of Greenville Cnty., 303 F.3d 523, 536 (4th Cir. 2002)).

This conclusion is supported by Henderson, 20 Va. App. at 480-81, 458 S.E.2d at 303. In Henderson, a correctional officer's duties included "'[a]ll security, security and safety of the inmates and the other employees.'" Id. at 480, 458 S.E.2d at 303. Henderson testified he checked the tower officers each time he walked through the correctional unit to make sure the officers were alert. "Observation of the guard towers was one of the security functions of his employment." Id. Henderson testified that on the day he slipped, he was descending the stairs and was observing one of the guard towers when the accident occurred. This Court held that because observation of the towers was a function of his employment, the way in which Henderson performed that aspect of his job increased his risk of falling and directly contributed to the cause of his fall and injury. Id.

> Henderson's injury occurred because of the performance of his job duties in a particular manner. Therefore, the cause of the injury was not "unrelated to any hazard common to the workplace." Because Henderson's employment exposed him to a danger that caused his injury, it arose out of his employment. The commission did not err in its award of medical benefits.

Id. at 481, 458 S.E.2d at 303.

---

his actions and locations immediately before the fall in detail [and this] evidence, combined with the other circumstances, created the 'critical link' between claimant's employment, his fall and resulting injury"). Cf. PYA/Monarch, 22 Va. App. at 224-25, 468 S.E.2d at 692-93 (reversing commission's compensation award, in part, because claimant's fall was unexplained accident where claimant was unable to recall any details of fall and no one witnessed fall).

Similarly, here, claimant, while performing his job duty, was on the roof, twenty-five feet above the ground, looking for the source of a leak when he slipped or misstepped before falling. Because he was not looking at his feet and was looking for a tree or something that caused the roof to leak, claimant's "injury occurred because of the performance of his job duties in a particular manner." See Henderson, 20 Va. App. at 481, 458 S.E.2d at 303. Claimant's "employment exposed him to a danger that caused his injury, it [thus] arose out of his employment." Id. Accordingly, we affirm the award of benefits to claimant.

Appellants also argue the commission erred in finding claimant made reasonable attempts to market his remaining work capacity by working part-time at G. C. Construction.

Code § 65.2-502(A) requires an employer to pay to an employee with partial incapacity for work caused by a compensable injury "a weekly compensation equal to 66 2/3 percent of the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter." An employee "must present 'some evidence that he [has] engaged in a good faith effort to obtain work within the tolerance of his physical condition' and has failed to find a job, either due to his injury or because no such work was available in the community." Ford Motor Co. v. Favinger, 275 Va. 83, 90, 654 S.E.2d 575, 579 (2008) (quoting National Linen Serv. v. McGuinn, 8 Va. App. 267, 271, 380 S.E.2d 31, 34 (1989)). "In determining whether a claimant has made a reasonable effort to market his remaining work capacity, we view the evidence in the light most favorable to . . . the prevailing party before the commission." National Linen Serv., 8 Va. App. at 270, 380 S.E.2d at 32. A claimant has the burden of proving entitlement to benefits and that he made a reasonable effort to procure suitable work and to market his remaining work capacity. See Great Atl. & Pac. Tea Co. v. Bateman, 4 Va. App. 459, 464, 359 S.E.2d 98, 100 (1987). "'The determination of whether a partially disabled employee has adequately marketed his residual work capacity lies within the

fact-finding judgment of the commission, and its decision on that question, if supported by credible evidence, will not be disturbed on appeal.'" Virginia Natural Gas, Inc. v. Tennessee, 50 Va. App. 270, 283, 649 S.E.2d 206, 213 (2007) (quoting Wall Street Deli, Inc. v. O'Brien, 32 Va. App. 217, 220-21, 527 S.E.2d 451, 453 (2000)). Unless we can say as a matter of law that claimant's evidence sustained his burden of proof, the commission's findings are binding and conclusive upon us. See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

The record shows claimant was restricted by his treating physicians to working two hours per day from June 21, 2010 through September 22, 2010 and four hours per day thereafter. G. C. Construction offered claimant light-duty work at his pre-injury wage that was pro-rated based upon the number of hours he worked. Thus, as the commission found, claimant worked "the maximum number of hours and within his work restrictions." In addition, claimant testified he did not refuse any offer of light-duty work from G. C. Construction. There was no evidence that employer told claimant to seek additional employment. Instead, it was undisputed that claimant could not return to his full-time pre-injury employment position and that he accepted the light-duty position offered by his employer, within the tolerance levels imposed by his physical condition, and he worked the maximum number of hours as restricted by his treating physicians. Moreover, pursuant to Code § 65.2-510(A), if claimant had refused the position, his right to benefits may have been terminated.

Under these circumstances, we conclude credible evidence supports the commission's determination that claimant reasonably and adequately marketed his residual work capacity.

For these reasons, we affirm the decision of the commission.

Affirmed.

McCullough, J., concurring.

I join the majority in concluding that this accident was not "unexplained" and that the claimant adequately marketed his residual work capacity. I also concur in the result reached by the majority that this accident was one that arose out of the employment. I do not, however, disagree with the reasoning of the commission or see the need to provide an alternative rationale.

"Excluded [from compensation under the Act] is an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment." United Parcel Serv. v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985). Thus, a back injury that occurs while tying one's shoe does not qualify, id., and neither does a muscle tear that occurs when the claimant simply gets up from a chair and is injured while "walking along a level, clean, unobstructed and well-lighted corridor," Richmond Mem. Hosp. v. Crane, 222 Va. 283, 286, 278 S.E.2d 877, 879 (1981). The reason the accident was compensable in Marion Corr. Ctr. v. Henderson, 20 Va. App. 477, 458 S.E.2d 301 (1995), a case cited by the majority, was because a commonplace activity, walking down an ordinary flight of stairs, had to be performed in an unusual way. Id. at 481, 458 S.E.2d at 303.

In contrast to walking down a flight of stairs – a task encountered daily, in and out of work, by nearly all members of the public – working on a roof, twenty-five feet above the ground, is not a hazard to which the claimant would have been equally exposed apart from the employment. In my view, the claimant's misstep or slip from the roof plainly "appear[ed] to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." Basement Waterproofing & Drainage v. Beland, 43 Va. App. 352, 357, 597 S.E.2d 286, 288 (2004) (quoting Bradshaw v. Aronovich, 170 Va. 329, 335, 196 S.E. 684, 686 (1938)). Therefore, I join the majority in affirming the commission.