COURT OF APPEALS OF VIRGINIA

Present:  Judges Petty, O'Brien and Senior Judge Clements
Argued by videoconference

UNPUBLISHED

BRANDON LEE SNEAD

v.     Record No. 0027-20-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE JEAN HARRISON CLEMENTS
MAY 4, 2021

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
J. Leyburn Mosby, Jr., Judge

Matthew L. Pack (M. Pack Law, PLLC, on brief), for appellant.

Mason D. Williams, Assistant Attorney General (Mark R. Herring,
Attorney General; Victoria Johnson, Assistant Attorney General, on
brief), for appellee.

The trial court's final judgment convicted appellant of statutory burglary, in violation of

Code § 18.2-90, two counts of robbery, in violation of Code § 18.2-58, and one count of the use of a

firearm during the commission of a felony, in violation of Code § 18.2-53.1.  Appellant argues that

the trial court abused its discretion and violated his Sixth Amendment right to confrontation when it

admitted statements of an unidentified co-conspirator against him without satisfying the hearsay

exception of statements made by a co-conspirator in furtherance of a conspiracy and therefore

denied him the right to cross-examine that witness against him.  We affirm the convictions.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." Gerald v. Commonwealth,

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

295 Va. 469, 472 (2018) (quoting Scott v. Commonwealth, 292 Va. 380, 381 (2016)). In doing so, we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. Id. at 473. On November 2 and 3 of 2016, Carlton Goode and Jonas Martin were in Goode's room at a lodging house in the City of Lynchburg. The house was divided into separate room apartments, and Goode's room was located on the second floor at the back of the house. Goode's room locked, and each room had separate keys; Goode's key would not open another resident's door. The front door to the home also had a lock and key, but the lock was broken at the time.

On November 2, 2016, appellant and another unknown man were guests of another resident, Ricardo Jones. The group was drinking beer and smoking on the front porch. Around 7:00 or 8:00 p.m., appellant came to Goode's room and offered to sell Goode and Martin "some type of crystal powder or something." Goode and Martin declined the offer. Appellant came up to Goode's room alone, but "made it clear" that the other man was nearby and available, if needed. Appellant then left the house.

In the early morning of November 3, 2016, appellant returned to Goode's room and knocked on the door to offer drugs again. Through the closed door, Goode reiterated that he and Martin were not interested. After a period of silence, Goode stepped out of his room, and he and Martin went down the stairs and watched to make sure appellant left. As they watched, Goode and Martin saw another person come onto the front porch with his face and hand concealed, carrying what looked like a firearm. Appellant and the other perpetrator then entered the house. Goode and Martin ran up the stairs, back to Goode's room as appellant and the other perpetrator followed. Goode locked his door, and he and Martin barricaded the door with their bodies because appellant and the other perpetrator were "beating" and "banging" on the door. Martin began yelling to try and get another resident's attention. Eventually, appellant and the other perpetrator broke down the door

- 2 -

and entered Goode's room. Appellant and the other perpetrator directed Goode and Martin to give them any money that they had, and appellant ordered Martin to lay on the floor face down. The other perpetrator pointed the concealed object at Goode and Martin and threatened their lives during the incident. Appellant took the money, wallets, and other items Goode and Martin had placed on the floor. Appellant and the other perpetrator then quickly left the house through the front door.

Goode and Martin borrowed another resident's phone to call police. The door to Goode's room had been taken off the hinges, was "destroyed" "beyond all recognition," and could not be fitted back into the frame. Lynchburg Police Officer Bond responded to the house at 1:25 a.m. Officer Bond noted that Goode and Martin appeared "shaken" and "nervous." Goode and Martin provided a description of appellant and the other perpetrator and identified appellant by his nickname. After speaking with Officer Bond, Martin found appellant's wallet on the walkway in front of the house, which contained appellant's photo identification.

Ricardo Jones confirmed that appellant had visited him at the house on November 2 on the front porch of the house. Jones stated that he did not hear the incident in question but was also not sure if he was home; Jones indicated that "it [was] a big possibility I was at home." Appellant testified that he visited Jones at the house on November 2 but denied being present in the early morning hours when the incident occurred on November 3. Appellant stated that he thought he lost his wallet earlier in the day on November 2 and went looking for it that evening but could not find it. He denied robbing Goode and Martin.

At the trial, appellant objected to Goode's testimony concerning the other perpetrator's statements. Appellant argued that permitting Goode to recount the statements violated the Confrontation Clause of the Sixth Amendment. The Commonwealth argued that the statements were not testimonial and were not hearsay under the exception as statements made by a

- 3 -

co-conspirator during a conspiracy. The trial court overruled appellant's objection and permitted Goode's testimony.

The trial court's final judgment convicted appellant of statutory burglary, two counts of robbery, and use of a firearm during the commission of a felony and sentenced him to forty-three years' imprisonment, with thirty-six years and six months suspended. This appeal follows.

ANALYSIS

"Although we will not disturb on appeal decisions regarding the admissibility of evidence absent an abuse of the circuit court's discretion, we review *de novo* the constitutional question of whether a particular category of proffered evidence is testimonial hearsay." Logan v. Commonwealth, 72 Va. App. 309, 316 (2020) (*en banc*) (quoting Cody v. Commonwealth, 68 Va. App. 638, 658 (2018)).

The Confrontation Clause guarantees that a criminal defendant will have the opportunity "to be confronted with the witnesses against him." U.S. Const. amend. VI. "Within the meaning of the Confrontation Clause, 'witnesses' means 'those who bear testimony,' or '[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact.'" Logan, 72 Va. App. at 316 (quoting Crawford v. Washington, 541 U.S. 36, 51 (2004)). "Thus, the Confrontation Clause prohibits the introduction of 'testimonial' statements by a witness who does not testify at trial, unless the witness is 'unavailable to testify, and the defendant . . . had a prior opportunity for cross-examination.'" Id. at 316-17 (quoting Crawford, 541 U.S. at 54).

"A statement qualifies as testimonial if the 'primary purpose' of the statement was to 'creat[e] an out-of-court substitute for trial testimony.'" Id. at 318 (quoting Michigan v. Bryant, 562 U.S. 344, 369 (2011)). "Essentially, testimonial statements are those that 'are functionally identical to live, in-court testimony, doing precisely what a witness does on direct examination.'" Id. (quoting Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310-11 (2009)). "[A] statement cannot

- 4 -

fall within the Confrontation Clause unless its *primary* purpose was testimonial." Id. (quoting Cody, 68 Va. App. at 658).

To determine "the 'primary purpose' of a statement, courts must consider 'all of the relevant circumstances,' and determine the objective purpose of the statement at the time it was made—not the statement's possible availability for use at a later trial." Id. (quoting Bryant, 562 U.S. at 358, 369). "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." Id. (quoting Bryant, 562 U.S. at 360). "Where the primary purpose of a statement was not to create an out-of-court substitute for trial testimony, the Confrontation Clause is satisfied and 'the admissibility of [that] statement is the concern of state and federal rules of evidence.'" Id. (quoting Bryant, 562 U.S. at 359). "[I]n the end, the question is whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the [statement] was to 'creat[e] an out-of-court substitute for trial testimony.'" Id. at 318-19 (quoting Ohio v. Clark, 576 U.S. 237, 245 (2015)).

Viewed objectively, the circumstances surrounding the challenged statements demonstrated that the other perpetrator was engaged in a course of criminal conduct. The other perpetrator ordered Goode and Martin to give up whatever money and valuables they had and threatened them if they did not comply. The other perpetrator also instructed appellant to collect the wallets and other valuables from the floor. The primary purpose of the statement was not to create an out-of-court substitute for trial testimony. Rather, the statements were made in furtherance of the

crimes. Accordingly, we find that these statements are not testimonial, and the circuit court did not violate appellant's constitutional right to confrontation in admitting them.[1]

At trial, appellant objected to the admissibility of the other perpetrator's statements only as violating his Sixth Amendment right to confrontation. Appellant did not object to the admissibility of the statements on the ground that a *prima facie* case of conspiracy had not been established, nor did appellant object to the order of proof. Thus, the Court does not address appellant's remaining arguments challenging the admissibility of the statements because they are barred by Rule 5A:18.[2] Accordingly, we affirm appellant's convictions.

Affirmed.

---

[1] Although the trial court admitted the statements as statements made by a co-conspirator, "it is the settled rule that how[ever] erroneous . . . may be the reasons of the court for its judgment upon the face of the judgment itself, if the judgment be right, it will not be disturbed on account of the reasons." Martinez v. Commonwealth, 71 Va. App. 318, 332 (2019) (quoting Perry v. Commonwealth, 280 Va. 572, 579 (2010)). "When the trial court has reached the correct result for the wrong reason, but the record supports the right reason, '[appellate courts] will assign the correct reason and affirm that result.'" Id. (quoting Perry, 280 Va. at 579).

[2] "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." Rule 5A:18. "Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." Bethea v. Commonwealth, 297 Va. 730, 743 (2019). Although there are exceptions to Rule 5A:18, appellant has not invoked them, and the Court does not apply the exceptions *sua sponte*. Jiddou v. Commonwealth, 71 Va. App. 353, 368-69 n.8 (2019).