UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Fulton and Friedman
Argued by videoconference


ELIZABETH W. MANN

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0812-24-1                      JUDGE JUNIUS P. FULTON, III
                                                    JULY 22, 2025
CITY OF VIRGINIA BEACH, ET AL.


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
James C. Lewis, Judge[1]

W. Barry Montgomery (KPM Law, on briefs), for appellant.

Christopher J. Turpin, Associate City Attorney (Mark D. Stiles, City
Attorney; Christopher S. Boynton, Deputy City Attorney; Gerald L.
Harris, Senior City Attorney, on brief), for appellees.


Elizabeth Mann was employed by the City of Virginia Beach ("the City") at the time of the

May 31, 2019 mass shooting at the Virginia Beach Municipal Center.  A few days after the

shooting, Mann's supervisor, Wendy Swallow, convened a meeting of city employees to discuss the

tragedy.  Mann criticized Swallow during this meeting, stating in relevant part that Swallow was

"exactly the same type of supervisor that probably pushed [the shooter] to do that."  Construing this

as a violation of its Workplace Violence Prevention Policy, the City terminated Mann's

employment.  Mann appealed her termination to the City's Personnel Board pursuant to its

grievance polices, and the Personnel Board upheld Mann's termination.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Judge Kevin M. Duffan presided over the hearing on the City and Swallow's motion for summary judgment.  Judge James C. Lewis presided over the plea in bar jury trial which rendered a verdict for Mann.

Mann then sued the City in the Circuit Court for the City of Virginia Beach alleging, in relevant part, that the City terminated her in violation of the Fraud and Abuse Whistle Blower Protection Act ("WBPA"), Code §§ 2.2-3009 to -3014. The City filed a plea in bar arguing that because it had fired Mann for misconduct as defined in Code § 2.2-3010, the WBPA was inapplicable. The case proceeded to a jury trial solely on the question of whether the City had terminated Mann for misconduct. Upon conclusion of the evidence, the jury found that Mann was *not* "discharged from her employment with the City of Virginia Beach for engaging in misconduct" and the City moved to set aside this verdict. After oral argument, the trial court set aside the jury verdict and granted the City's plea in bar. For the following reasons, we reverse the trial court's decision and reinstate the jury's verdict.

BACKGROUND[2]

I. The 2019 Virginia Beach Municipal Complex Shooting and Mann's Termination

On the afternoon of Friday, May 31, 2019, a former city employee, armed with a firearm, entered Building 2 of the Virginia Beach Municipal Complex and opened fire, killing twelve, including eleven fellow city employees, and injuring several others. Mann, a full-time Family Services Specialist 3 for Virginia Beach, was not present during the shooting, but knew several individuals who were.

---

[2] When reviewing on appeal evidence submitted at trial, appellate courts "consider all facts in the light most favorable" to the party that prevailed in the trial court. *Bank of Hampton Rds. v. Powell*, 292 Va. 10, 15 (2016). The party who successfully persuades the factfinder "is entitled [on appeal] to have the evidence viewed in the light most favorable to her, with all conflicts and inferences resolved in her favor." *Chacey v. Garvey*, 291 Va. 1, 8 (2015). In addition, "'an appellate court must consider all the evidence admitted at trial that is contained in the record' and not limit itself to 'merely the evidence that the reviewing court considers most trustworthy.'" *Bowman v. Commonwealth*, 290 Va. 492, 494 n.1 (2015) (first quoting *Perry v. Commonwealth*, 280 Va. 572, 580 (2010); and then quoting *Commonwealth v. Jenkins*, 255 Va. 516, 522 (1998)).

On Monday, June 3, 2019, the next workday following the shootings, Mann's supervisor, Wendy Swallow, called a special staff meeting to discuss the shootings and the steps that the City was taking in response to the shooting. During this meeting, Mann asked Swallow if she could "speak freely" and once Swallow advised Mann that she could, Mann started by saying "[f]or those of you all that don't know, I had three friends that work in that building." She continued, saying "I don't detect any sincerity from you at all, Wendy. You are exactly the same type of supervisor that probably pushed this guy to do that."[3] In response to Mann's comments, Swallow asked Mann to stop. Mann continued speaking, expressing sentiments that supervisors did not care about their employees. Swallow then asked Mann to leave the meeting because the comments were "condescending" and Mann told Swallow "[g]o ahead and write me up for saying that. You don't care. . . . You can write me up for being condescending. It is factual. I have facts about how you treat me and my co-workers." Mann then left the meeting as asked. During the special plea in bar trial, Swallow testified that roughly 30 days before this meeting she became aware of Mann's criticisms of her as a supervisor when another manager, Portia Green, sent her an inner office memo stating that Mann had gone to Human Resources to complain.

On June 5, 2019, Mann sent an email to David Hansen, the Virginia Beach City Manager and several members of the Virginia Beach City Council complaining about numerous violations of state laws and regulations as well as the city code of ethics and other city policies. She specifically alleged that her managers, including Wendy Swallow and Portia Green, engaged in workplace abuse, bullying, and harassment of herself and other employees. Mann also indicated that her prior complaints of workplace abuse, harassment, and bullying had also gone

---

[3] Mann made an audio recording of the staff meeting that was admitted as evidence at trial and published to the jury.

unaddressed.  The City Manager forwarded this email to Human Resources, Swallow, Green, and others stating that it needed to be reviewed and indicating he was frustrated that Mann had reached out directly to the City Council.

On June 14, 2019, the City terminated Mann's employment due to an alleged violation of the City's Violence Prevention Policy based on her comments at the June 3 meeting.

## II.  The Personnel Board Hearing

Mann filed a grievance of her termination pursuant to Code § 15.2-1507.  The Personnel Board hearing occurred on October 11, 2019, and Mann was afforded the following procedural due process protections: an in-person appearance before the board; representation by legal counsel prior to and during the hearing; an opportunity to testify; and an opportunity to call her own witnesses, introduce evidence, and cross-examine the City's witnesses.  Mann testified before the Board that she was terminated for being a whistleblower, and not because the statements she made to Swallow at the June 3 meeting violated the City's Violence Prevention Policy.  At the conclusion of the hearing, the Personnel Board unanimously upheld the City's decision to terminate Mann's employment and issued a letter stating this on October 14, 2019.

## III.  Mann's Cause of Action Under the Virginia Fraud and Abuse Whistle Blower Protection Act

On February 16, 2021, Mann filed a civil action for wrongful termination in violation of the Virginia Fraud and Abuse Whistle Blower Protection Act ("WBPA") in the circuit court.[4] Her complaint specifically sought compensatory damages in the amount of $750,000, punitive

---

[4] Mann alleged three counts in her complaint, namely, malicious prosecution, wrongful termination, and violation of the WBPA.  However, only the WBPA claim is pertinent for this appeal.  Mann's claim for wrongful termination was dismissed with prejudice following the trial court's grant of the City's and Swallow's demurrers.  As to Mann's claim for malicious prosecution, the trial court dismissed with prejudice the claim against the City when it granted the City's special plea of sovereign immunity, and Mann voluntarily nonsuited the claim against Swallow during trial.

damages in the amount of $350,000, and costs and attorney's fees. Upon being served with Mann's complaint, the City and Swallow filed a demurrer and special plea in response to Mann's whistleblower claim. After hearing argument on the demurrers and special pleas, Judge A. Bonwill Shockley determined that there were matters of disputed fact between the parties as to the whistleblower claims, and the matter was set to proceed to a jury trial on all issues of contested fact in the special pleas.

Prior to the jury trial, but after the completion of some discovery including responses to a series of requests for admissions from Mann, the City and Swallow moved for summary judgment as to Mann's whistleblower claim. The City and Swallow argued that the Personnel Board's unanimous decision to uphold Mann's termination was "final and binding" as a matter of law pursuant to Code § 15.2-1507(A)(10)(a)(6) and, thus, that there was no issue of disputed fact left for a jury to decide. Mann argued instead that the findings of the Personnel Board were not binding because the WBPA specifically permitted employees to challenge alleged acts of whistleblower retaliation through both a municipality's grievance procedure and through a civil action.

After a hearing, Judge Kevin M. Duffan denied the City and Swallow's motion for summary judgment. In his order, Judge Duffan incorporated the transcript of the hearing by reference, which included his remarks that his ruling was specifically not allowing Mann to "re-litigate things that were already decided by the [Personnel Board]" and was "specifically for everything that was left out [of the Personnel Board hearing]."

On October 17, 2023, a jury trial on the City's and Swallow's special pleas began with Judge James C. Lewis presiding. Swallow and City Human Resources Director Stacy Hawks were called as witnesses. Swallow testified about Mann's comments at the June 3, 2019 meeting and an audio recording of the meeting was introduced as evidence. On cross-examination,

Mann's counsel asked Swallow about a May 2, 2019 "inner-office memorandum" from Portia Green wherein Green advised Swallow that Mann "had been to human resources [and] sunglikeabird [sic]." While the memorandum itself was not introduced into evidence, its content was read to the jury and Swallow testified that she recognized the document as true.[5] Next, Hawks testified about the City's employee grievance procedures, including hearings before the Personnel Board, as well as to Mann's hearing before the Board on October 11, 2019. As a part of Hawks's testimony, she authenticated an audio recording of the *entire* Personnel Board hearing, and the *entire* set of documents produced by Mann and the City that were considered by the Personnel Board. The recording and documents were then admitted into evidence.

Steven Derrick, Jr., Swallow's former assistant who was present at the June 3, 2019 meeting and who testified before the Personnel Board, testified at trial that Mann neither directly threatened Swallow during the meeting nor made any threatening gestures or conduct towards Swallow as she left the meeting. He also testified that Swallow did not seem afraid, Mann was not threatening harm to anyone and that she was just "very emotional about the situation."[6] He further testified that while he did console some of the other employees present at the meeting, there was "a lot of emotion going around" given that this meeting happened following the mass shooting on May 31, 2019.

At the conclusion of Mann's evidence, the City and Swallow moved to strike Mann's case arguing that, pursuant to Judge Duffan's ruling on summary judgment, the jury could not

---

[5] The trial court sustained the City's objection to the introduction of the memorandum into evidence but allowed it to be shown to Swallow during cross-examination to refresh her recollection.

[6] Derrick's testimony before the Personnel Board was focused on having to console other employees who were present at the meeting and his relationship with supervisors and management. He provided no testimony before the Personnel Board about whether Swallow appeared fearful when confronted by Mann or Mann's actions when she left the meeting.

reconsider the same evidence considered by the Personnel Board and reach a different conclusion. Arguing that both Derrick and Mann testified that their testimony before the jury was the same as their testimony before the Personnel Board, the City and Swallow asserted that "there is nothing in this case in the plaintiff's evidence that sets outside of what was properly before or . . . considered by the Personnel Review Board" and, therefore, her case should be stricken as a matter of law. Mann opposed the motion arguing that Judge Duffan's previous denial of the City's summary judgment motion established that there was a clear dispute of fact before the jury. Judge Lewis subsequently denied the motion to strike.

After hearing all of the evidence, the jury was instructed that the issue in the case was:

> [w]hether the City of Virginia Beach terminated Elizabeth Mann's employment because she engaged in "misconduct." "Misconduct" is defined as conduct or behavior by an employee that is inconsistent with state, local or agency standards for which specific corrective or disciplinary action is warranted or a violation of criminal law.

The trial court also instructed the jury that the City bore the burden to prove that it terminated Mann's employment because she engaged in "misconduct." The trial court refused the City's proposed instruction that the jury was to be bound by all findings of fact by the Virginia Beach Personnel Board.

The jury, having reviewed the evidence in its totality and without any limiting instructions, returned a verdict in favor of Mann, determining that she was not discharged from her employment due to engaging in "misconduct" as defined by the act. The City and Swallow then moved to set aside the jury verdict and for judgment notwithstanding the verdict on the special plea in bar. After briefing and oral argument on the motion, the trial court held that the jury's verdict was to be set aside and entered judgment in favor of the City and Swallow. Mann now appeals.

ANALYSIS

On appeal, Mann argues that the trial court erred when it: 1) entered a final order granting the City's motion to set aside a jury verdict in favor of Mann following the trial of the City's special plea in bar and instead entering final judgment in favor of the City notwithstanding the verdict; and 2) ruled that a prior decision of the Virginia Beach Personnel Grievance Panel pursuant to Code § 15.2-1507(A)(10)(a)(6) was binding on the court in trying Mann's cause of action for whistleblower retaliation pursuant to Code § 2.2-3011.[7]

We apply a well-settled standard of review to cases where the trial court has set aside a jury verdict. The trial court's authority to do so can only be exercised where the verdict is plainly wrong or without credible evidence to support it. *Henderson v. Gay*, 245 Va. 478, 480 (1993) (citing *Lane v. Scott*, 220 Va. 578, 581 (1979)). Further, when considering a motion to set aside a jury verdict, a trial court must consider *all* the evidence in the case because the trial court is placing itself in the jury's shoes and, therefore, must see what the jury saw so that it can decide whether *any* credible evidence exists to support the jury's verdict. *T.M. Graves Constr., Inc. v. Nat'l Cellulose Corp.*, 226 Va. 164, 169 (1983).

Here, the jury was instructed that the sole issue before them was:

> [w]hether the City of Virginia Beach terminated Elizabeth Mann's employment because she engaged in "misconduct." "Misconduct" is defined as conduct or behavior by an employee that is inconsistent with state, local or agency standards for which specific corrective or disciplinary action is warranted or a violation of criminal law

and that the City bore the burden to prove that Mann was terminated because she engaged in misconduct. The trial court further refused a proposed jury instruction that they were to be

---

[7] The City seems to argue that Mann is also improperly asserting a third assignment of error in her opening brief, but the reference they base this argument on is the same as Mann's second assignment of error.

bound by all findings of fact by the Personnel Board, and no limiting instructions were given to the jury.

When making their factual findings, the jury had the opportunity to review and weigh not only *all* of the evidence presented to the Personnel Board but also the evidence presented at the special plea in bar trial, including Swallow's testimony about the May 2, 2019 memo and Derrick's testimony about Mann's behavior at the meeting, both of which point to alternative bases for Mann's termination. Further, the jury was not given any instruction regarding the effect of the Personnel Board's ruling and, thus, were free to consider the evidence in its totality in determining whether Mann was terminated for misconduct.

Under the applicable standard, the trial court was required to put itself in the shoes of the jury when determining whether there was *any* credible evidence to support the jury's verdict in favor of Mann. The totality of the evidence before the jury, including the entirety of the evidentiary record before the Personnel Board *and* Mann's additional trial evidence, namely Swallow's testimony about the May 2, 2019 memo from Portia Green and Derrick's testimony about Mann's behavior at the June 3, 2019 meeting, both rebut the City's evidence of misconduct and support the jury's verdict that the City failed to meet its burden in establishing that Mann's employment was terminated for engaging in misconduct. Given the limited and narrowly defined role of the trial court in determining whether credible evidence exists to support that verdict, we certainly cannot say that the jury was plainly wrong in its determination of the weight it ascribed to the evidence. This is especially so given that the jury's consideration of that evidence was not circumscribed by any limiting instruction regarding the preclusive effect

- 9 -

of the Personnel Board's decision.  Consequently, the trial court erred when it granted the City's motion to set aside the jury's verdict and entered judgment in favor of the City and Swallow. [8]

CONCLUSION

For the foregoing reasons, we reverse the trial court's grant of the City's motion to set aside the jury verdict and reinstate the jury's original verdict on the special plea in bar. Additionally, we remand the case to the trial court for a full trial on the merits consistent with this opinion.

*Reversed and remanded.*

---

[8] Based on our determination that the trial court erred in entering a final order granting the City's motion to set aside a jury verdict in favor of Mann, we need not reach Mann's second assignment of error concerning the trial court's interpretation of whether there is a preclusive effect of Code § 15.2-1507 on the WBPA.