Present:  Kinser, C.J., Lemons, Goodwyn, Millette, and Mims, JJ., and Koontz, S.J.*

MICHAEL DEON HICKS

v.  Record No. 100727     OPINION BY JUSTICE DONALD W. LEMONS
                                   March 4, 2011
COMMONWEALTH OF VIRGINIA

            FROM THE COURT OF APPEALS OF VIRGINIA

     In this appeal, we consider whether the Court of Appeals erred when it affirmed the conviction of Michael Deon Hicks ("Hicks") for possession of heroin which occurred after denial of his motion to suppress evidence seized pursuant to execution of a search warrant.

                I.  Facts and Proceedings Below

     On September 11, 2008, Richmond Police Narcotics Detective Sergeant Ronald Armstead ("Armstead") was involved in an unrelated police drug investigation using a confidential informant in a "control[led] buy operation."  The informant had been working with the police and making controlled buys for a six month period, and he was considered reliable.  His information had helped police obtain search warrants, arrest several individuals, and seize illegal narcotics.  The informant had used cocaine and heroin in the past, and he was

_____

     * Justice Koontz presided and participated in the hearing and decision of this case prior to the effective date of his retirement on February 1, 2011; Justice Kinser was sworn in as Chief Justice on February 1, 2011.

familiar with their packaging and street-level distribution. The informant was "wired" for audio and video recording.

While working on this unrelated operation, Armstead observed four individuals enter a home at 2111 Richmond Street (the "home") at different times and leave within 30 seconds. The home is located in what police referred to as "a high drug area." Armstead saw one man take money out of his pocket before entering the home. After another person, a woman, entered and exited the home, she was approached by the informant. She opened a piece of folded paper and showed the contents to the informant. The informant subsequently told Armstead that the woman showed him what she said was heroin that she had just purchased inside the "Dope House," referring to the home. Armstead and the informant then met with Detective Marvin Marsh ("Marsh") at a staging location and told him what had occurred.

Based on this information, Marsh completed an affidavit in support of a search warrant ("the affidavit"), in which he additionally stated that "this activity is an indicator and is consistent with foot traffic when purchasing illegal narcotics from a drug house." In the affidavit, Marsh concluded that "[he] believe[s] evidence supporting the involvement of [the home] and those who frequent this residence solely to sell and

or purchase heroin, will be recovered from the residence. . . ."

Based on the information in the affidavit, Marsh secured a search warrant ("the warrant") for the home on September 12, 2008. The warrant commanded the search of the home for the following:

> Heroin . . . and any paraphernalia used in the preparation, packaging, and distribution of Heroin. Any instruments of the illegal drug trade and fruits from the sale of Heroin. Any electronic devices used to aid the distribution of Heroin. Any financial or written records or documents identifying the owners involvlement [sic] in the illegal drug trade. Any firearms and/or ammunition found inside the residence.

The search warrant was not executed until 13 days later on September 25, 2008. During the interim period, Marsh's investigation revealed that the utilities at the home were registered to Isis Trent, whose boyfriend, Hicks, had "been involved in two pending drug transactions" that police recorded on video, and he had a criminal record involving robbery and heroin distribution.

Marsh testified that after the warrant was issued on September 12, he conducted several "spot checks, mobile surveillances, driving through the area, sitting for a while, and [he] didn't at that point in time observe any foot traffic in and out of the residence." Each time he drove by, "there

3

was no one in the front yard, no one on the sidewalk areas, no one out," and he considered the area "to be dead."

However, on September 25, Marsh testified that there was an increase in activity, and within the span of 10 minutes he saw "more than five" individuals enter the home, stay for 20-30 seconds, and then leave. Marsh testified that this was similar to the pattern of foot traffic observed by Armstead on September 11th. He explained that the short visit time was significant, stating that "because we are dealing with illegal narcotics, they don't want to stay too long. They purchase what they're going to purchase and they leave." Marsh also observed men who appeared to be "posting up," "standing in the front yard, [who] from time to time would glance to the left and to the right as if being lookouts." He said that these men appeared to be "very conscientious [sic] of their whereabouts, their surroundings." Marsh testified that, in his experience, when people "post up" as lookouts, it is "very obvious" and their role is to "yell out" if they see the police to warn others that law enforcement is in the area. Marsh concluded that his observations were "consistent with the sale of narcotics," and he left the area to assemble other officers to execute the search warrant.

When the search warrant was executed that evening, police found several individuals inside the home, including Hicks,

4

Hicks' girlfriend, Hicks' cousin, and three young children. After being advised of his rights, Hicks told Marsh that his cousin had heroin hidden in his undergarments. When the police searched the kitchen and rear porch area of the home, Marsh observed that Hicks showed interest in the search, appeared "real antsy," and "would maintain eye contact with officers while they were in the kitchen area searching." On the rear porch, police found a bag containing approximately 14 grams of heroin. In response to questioning, Hicks said that his DNA may be on the bag, and he admitted that "I put up the money and my cousin sells the stuff." From other areas of the home, police also recovered 45 individually wrapped small "baggies" of heroin, a digital scale, packaging materials, and ammunition. Hicks admitted that the digital scale was used to weigh the heroin.

In denying Hicks' motion to suppress the evidence, the trial court held that "the affidavit in support of the search warrant was sufficient in its statement of material facts constituting probable cause for the magistrate to have issued the warrant for the search of [the home]." The trial court also held that the execution of the search warrant 13 days after its issuance did not constitute undue delay because once Marsh "observed the things that signaled to him as a drug detective that there was dealing going on, again, and that

dealing was probably heroin based on what happened on September 11th, it was appropriate . . . for the warrant to be executed at that time."  A jury found Hicks guilty of possession of heroin in violation of Code § 18.2-250.  The trial court imposed the jury's verdict and sentence of ten years in prison.

In an unpublished order, the Court of Appeals denied Hicks' petition for appeal.  Hicks v. Commonwealth, Record No. 2183-09-2 (March 17, 2010).  The Court of Appeals held that the affidavit provided sufficient probable cause to justify the issuance of the search warrant.  Id., slip op. at 2-3. The Court of Appeals further held that probable cause did not dissipate during the 13-day period, as "the detectives executed the warrant 'forthwith' within the meaning of Code § 19.2-56 and in compliance with the requirements of the Fourth Amendment."  Id., slip op. at 3-4.  Hicks timely filed his notice of appeal to this Court.  We awarded an appeal on the following assignments of error:

1. The Court of Appeals erred by affirming the trial court's decision to deny Hicks' motion to suppress the evidence when there was no probable cause to justify the search warrant.

2. The Court of Appeals erred by affirming the trial court's denial of Hicks' motion to suppress the evidence when the probable cause, if any, had dissipated, and the police did not execute the search warrant in a timely manner.

6

## II.  Analysis

### A. Standard of Review

The standard of review in this case is well settled.

> In reviewing the denial of a motion to suppress evidence claiming a violation of a person's Fourth Amendment rights, we consider the facts in the light most favorable to the Commonwealth, the prevailing party at trial. The burden is on the defendant to show that the trial court committed reversible error. We are bound by the trial court's factual findings unless those findings are plainly wrong or unsupported by the evidence. We will review the trial court's application of the law de novo.

Whitehead v. Commonwealth, 278 Va. 300, 306-07, 683 S.E.2d 299, 301 (2009) (quoting Malbrough v. Commonwealth, 275 Va. 163, 165, 665 S.E.2d 1, 3 (2008)).

### B. Probable Cause to Support Issuance of the Search Warrant

Hicks argues that the Court of Appeals erred in affirming the trial court's decision to deny his motion to suppress the evidence and holding that the affidavit was sufficient to support probable cause for the issuance of the search warrant.

We must look to the totality of the circumstances in order to determine whether the affidavit was sufficient to support the search warrant. Garza v. Commonwealth, 228 Va. 559, 563, 323 S.E.2d 127, 129 (1984) (citing Illinois v. Gates, 462 U.S. 213, 230 (1983)).  Probable cause for issuance of a search warrant exists when "there is a fair probability

7

that contraband or evidence of a crime will be found in a particular place." Jones v. Commonwealth, 277 Va. 171, 178, 670 S.E.2d 727, 731 (2009) (quoting United States v. Grubbs, 547 U.S. 90, 95 (2006)).  In Gates, the United States Supreme Court rejected any hypertechnical, rigid analyses when reviewing probable cause determinations made by judges and magistrates; rather, the proper approach is as follows:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.  And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

462 U.S. at 238-39 (quoting Jones v. United States, 362 U.S. 257, 271 (1960)). Additionally, when we review the magistrate's decision to issue the warrant, we must grant "great deference" to the magistrate's finding of probable cause.  Garza, 228 Va. at 563, 323 S.E.2d at 129.

Here, the affidavit was sufficient on its face to support probable cause for the search warrant.  Armstead observed several individuals enter the home at different times, each exiting within 30 seconds, and one of the individuals had money in his hand.  The reliable confidential informant spoke with a woman who had just exited the home, and she referred to

8

the home as a "Dope House."  Armstead also saw the woman open a folded piece of paper to show the informant what she stated was heroin she had just purchased inside the home.

Based on this information, as well as his training and experience, Marsh completed the affidavit in which he concluded that "this activity is an indicator and is consistent with foot traffic when purchasing illegal narcotics from a drug house."  From this evidence, the magistrate had a substantial basis for concluding that "there [was] a fair probability that contraband or evidence of a crime [would] be found" in the home.  Consequently, the affidavit presented sufficient probable cause for issuance of a search warrant. Jones, 277 Va. at 178, 670 S.E.2d at 731 (quoting Gates, 462 U.S. at 238).

### C. Dissipation of Probable Cause
### Prior to Execution of the Warrant

Hicks further argues that the Court of Appeals erred in holding that probable cause did not dissipate during the 13-day period between issuance of the search warrant and its execution.  Hicks argues that even if probable cause to search the home existed, it had dissipated by the time the search warrant was executed in violation of Code § 19.2-56.

Code § 19.2-56 imposes a 15-day limitation period on the execution of search warrants, stating that "[a]ny search

warrant not executed within 15 days after issuance thereof shall be returned to, and voided by, the officer who issued such search warrant."  Under this provision, no search warrant may be executed more than 15 days after its issuance.

Additionally, the statute further provides that "the [search] warrant shall command that the place be forthwith searched."  (Emphasis added.)  The Court of Appeals has previously observed that:

> "Forthwith," within the context of Code § 19.2-56, does not mean immediately or as soon as physically possible.  It does not mandate that officers must immediately execute the search warrant without regard to the circumstances that obtain.  The fact that the statute provides that the warrant expires if not executed within fifteen days means that some latitude is provided for the time within which the search may be conducted.  But, under that statute, "it is . . . necessary that search warrants be executed with some promptness in order to lessen the possibility that the facts upon which probable cause was initially based do not become dissipated."

Turner v. Commonwealth, 14 Va. App. 737, 742, 420 S.E.2d 235, 238 (1992) (citations omitted).  We agree with the Court of Appeals that "[t]he 'forthwith' requirement defines the policy of the state that search warrants, which are the foremost safeguard to protect against unreasonable searches proscribed by the Fourth Amendment, are to be executed with reasonable dispatch."  Id.  Therefore, "a warrant will be tested for 'staleness' by considering whether the facts alleged in the

10

warrant provided probable cause to believe, at the time the search actually was conducted, that the search conducted pursuant to the warrant would lead to the discovery of evidence of criminal activity." Johnson v. Commonwealth, 259 Va. 654, 671, 529 S.E.2d 769, 778 (2000).

Here, the search meets both the 15-day and "forthwith" mandates of Code § 19.2-56. Hicks suggests that probable cause had dissipated because Marsh waited to execute the search warrant until he saw signs of activity around the home. While we cannot know and will not speculate as to Marsh's intentions, it is clear from the record that no dissipation occurred over those 13 days as to the subject matter of the search. The warrant commanded the search of the home not only for heroin, but also for "paraphernalia," "instruments of the illegal drug trade," "fruits from the sale of Heroin," "electronic devices used to aid the distribution of Heroin," "financial or written records or documents," "firearms," and "ammunition." The probable cause that existed to support the issuance of the search warrant for these items had not dissipated when the search warrant was executed on September 25, 2008. Accordingly, the search warrant was timely executed pursuant to the requirements of Code § 19.2-56 and was conducted "forthwith" in compliance with the requirements of that statute and the Fourth Amendment.

## III.  Conclusion

For the reasons stated, we hold that the Court of Appeals did not err in affirming Hicks' conviction for possession of heroin in violation of Code § 18.2-250.  Accordingly, we will affirm the judgment of the Court of Appeals.

<u>Affirmed</u>.