PRESENT: Lemons, C.J., Goodwyn, Mims, McClanahan, Kelsey, and McCullough, JJ., and Russell, S.J.

VINCENT EARL SPINNER

v. Record No. 180583

OPINION BY
SENIOR JUSTICE CHARLES S. RUSSELL
May 30, 2019

COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal challenges a ruling by the trial court, affirmed by the Court of Appeals, denying Vincent Earl Spinner's motion to suppress evidence obtained as a result of a police interrogation. Spinner contends that his constitutional rights articulated by the Supreme Court of the United States in *Miranda v. Arizona*, 384 U.S. 436 (1966), and its progeny, were denied. Two questions are presented: (1) Whether the interrogation took place under circumstances requiring *Miranda* warnings prior to questioning, and (2) if so, whether the warnings actually given were constitutionally sufficient.

I. Facts and Proceedings

With one exception, discussed below, the facts relevant to the issues on appeal are undisputed. In accordance with familiar principles of appellate review, they will be considered in the light most favorable to the Commonwealth, the prevailing party below.

James C. Payne (the victim) lived alone in his home in Campbell County in 2012. He was 89 years old, suffered from diabetic complications and was largely dependent on a motorized scooter and a cane to move about. Several days each week he was assisted by a caregiver who came to his home, cooked his meals, ran errands for him and assisted him with business affairs.

On August 3, 2012, the victim's body was found on his kitchen floor in a pool of blood resulting from 25 stab wounds, one of which had penetrated his heart. He was last seen alive by a roofer who had visited the house that morning. The body was found by his son, who came to visit his father about 6:00 p.m. and called the police. The murder had apparently occurred about 2:00 p.m.

Investigator Brian Dudley of the Campbell County Sheriff's Office, who later qualified as an expert witness in crime scene forensics, processed the scene for fingerprints. He found none, not even those of the victim. There were no blood scatterings, footprints or other DNA-bearing materials, other than the victim's blood around his body. Dudley testified, however, that crime scenes so devoid of forensic evidence were not unusual. The victim's caregiver and family members testified that he always carried his wallet, containing cash, credit cards and medical cards, in his trouser pocket. The wallet and the victim's checkbook were missing from the crime scene. Neither was ever found, but the victim's healthcare provider prescription card, which he always carried in his wallet, was found under the driver's seat of the car Spinner was driving around this time.[1]

Investigator Mike Milnor, of the Campbell County Sherriff's office, was assigned to the case. Milnor's inquiries led him to focus his attention on Spinner, the victim's son-in-law, having married Tamara Payne, the victim's daughter. Spinner had formerly lived in the Lynchburg area but had been living with Tamara in Winchester since about 2009. A week before the murder, Spinner had called a family member to report that Tamara had left him and that he planned to return to Lynchburg on August 1, 2012 to stay with his brother, who had a home there.

---

[1] The car was registered in the name of Tamara Spinner.

The day after the murder, Investigator Milnor called on Spinner at Spinner's brother's home and asked him to come to the police station to help them find the perpetrator. Spinner declined, saying that he didn't want "things to get twisted up." On the morning of the following day, August 5, Spinner came to the police station voluntarily at Milnor's request but gave no information and asked if he was free to leave. When told that he was free to leave, he did so.

On the evening of the same day, at about 7:00 p.m., Investigator Milnor arrived at Spinner's brother's home accompanied by several other law-enforcement officers, for the purpose of executing search warrants for the residence and for the collection of fingernail clippings from Spinner for DNA analysis. While other officers searched the residence, Milnor spoke with Spinner outdoors, in an open carport beside the house and near a sidewalk, while another officer took Spinner's fingernail clippings. There was no evidence that Spinner was restrained in any way or that he was uncooperative, but Milnor testified at the suppression hearing that he thought the circumstances might amount to a custodial interrogation and that he therefore gave Spinner the following *Miranda* warnings before asking him any questions:

> You have the right to remain silent. Anything you say can and will be used against you in a court of law. You have the right to talk to a lawyer and have him present with you while you're being questioned. If you cannot afford to hire a lawyer, one will be appointed to represent you before any question and if you wish one. And I always caveat that with: 'If you're charged with a crime.' You can decide at any time to exercise any of these rights and stop answering questions or to stop answering—making any statements.

In response, Spinner made several statements which the court later held to be admissible in evidence as admissions. He appeared to understand the *Miranda* warnings, however, because he then told Milnor that he did not want to talk to him any further, whereupon the officers left the scene.

3

Spinner was arrested on August 7 and transported to the sheriff's office. Clearly then in custody, he was interrogated twice again after being given the same *Miranda* warnings. While he was being transported to the sheriff's office, Milnor suggested to him that he had not gone to the victim's home on the day of the murder with the intent to kill him; Spinner was silent, but gave Milnor an affirmative "up and down" nod of his head. Spinner contends that this evidence should have been suppressed.

A Campbell County grand jury indicted Spinner for capital murder, robbery and other offenses. He was indigent and counsel was appointed to represent him. The Commonwealth amended the charges to first degree murder and robbery and both parties agreed to waive jury trial. Defense counsel filed a pre-trial motion to suppress all statements made by Spinner on the ground that they had been obtained in violation of Spinner's constitutional rights against self-incrimination. The defense contended that Milnor's "caveat" ("if you are charged with a crime") rendered the warning contingent, uncertain, ambiguous and confusing, that it tainted all subsequent warnings and that any statements Spinner made after the first warning should be suppressed as "fruit of the poisonous tree." After hearing evidence and arguments on the motion, the court denied it. The court accepted Investigator Milnor's testimony as credible in describing the facts and circumstances surrounding his interviews with Spinner, but did not agree with Milnor's conclusion that the circumstances were such as to require any *Miranda* warnings at the "carport interview" on the evening of August 5. The court made an express factual finding that Spinner was not in custody at any time on either August 4 or 5 and that no *Miranda* warnings were required at any time until he was arrested on August 7. That ruling is the sole basis of Spinner's appeal to this Court.

4

The case culminated in a three-day bench trial in the Circuit Court of Campbell County. The evidence, apart from Spinner's admissions, was abundant but entirely circumstantial. Because Spinner's appeal is limited to the *Miranda* questions involved in his motion to suppress, it is unnecessary to review here the evidence unrelated to that issue. The court found Spinner guilty of first degree murder and robbery and imposed sentences of life imprisonment for both offenses.

Spinner filed a petition for appeal in the Court of Appeals, assigning error to the trial court's denial of his motion to suppress, to the trial court's ruling that the evidence was sufficient to support his conviction, and other claims not before us. By a per curiam order entered May 5, 2017, the Court of Appeals, after reviewing all the evidence, denied the petition. *Spinner v. Commonwealth*, Record No. 1070-16-3, at *1, *9-11 (Va. Ct. App. May 5, 2017). Spinner requested review by a three-judge panel. The panel entered an order granting the appeal as to two assignments of error: the trial court's ruling on the motion to suppress and another issue that is not before us.[2] The order denied the petition as to all other claims, including the sufficiency of the evidence to support the convictions.

The panel heard the appeal, and by an unpublished opinion dated April 23, 2018, Record No. 1070-16-3, 2018 WL 1597677, at *1, the Court of Appeals affirmed the convictions. We awarded Spinner an appeal limited to a single assignment of error: "The Court of Appeals erred in upholding the trial court's erroneous denial of Spinner's Motion to Suppress and in holding that Spinner was effectively advised under *Miranda*."

---

[2] The Court of Appeals held that any error covered by that assignment would have been harmless beyond a reasonable doubt.

## II.  Analysis

This appeal presents two questions:  (1) whether the circumstances existing at the time of Spinner's "carport interview" on August 5 were such as to require *Miranda* warnings before any questioning, and (2) whether the *Miranda* warnings actually given to him were sufficient to protect his Fifth Amendment rights.

### 1.  Custodial Interrogation

This question is not presented by Spinner's assignment of error, but by the Commonwealth's assertion of it as an independent ground for affirming the convictions.  In Virginia, an appellant's power to frame the issues on appeal is not exclusive.  The "right result for the wrong reason" doctrine has been a part of the law of Virginia for well over a century.  *See Schultz v. Schultz*, 51 Va. (10 Gratt.) 358, 384 (1853).  We applied it in a criminal case in *Perry v. Commonwealth*, 280 Va. 572, 581-82 (2010), where we quoted the Supreme Court of the United States:  "the appellee [is] free to defend his judgment on any ground properly raised below whether or not that ground was relied upon, rejected, or even considered by the [trial court] or the Court of Appeals" (quoting *Washington v. Confederated Band and Tribes*, 439 U.S. 463, 476 n.20 (1979)).  The doctrine has a limitation.  It does not apply unless the record on appeal fully supports the appellee's argument on appeal.  Thus, it does not apply where the development of additional facts is necessary.  *Whitehead v. Commonwealth*, 278 Va. 105, 115 (2009).

The doctrine might more accurately be labelled "the right result for a different reason." *Rickman v. Commonwealth*, 294 Va. 531, 542 (2017).  As we noted in *Perry*, it includes cases in which a lower court did not rely on a reason that was wrong, but did not consider the reason the appellee relies on as right.  280 Va. at 580-81.  This is such a case.  Although the trial court

decided that Spinner was not in custody at any time on August 4 or 5 so as to trigger the need for *Miranda* warnings, the Court of Appeals assumed, without deciding, that he was in custody at the "carport interview" on August 5 and went on to consider the sufficiency of the warning Milnor then gave him. *Spinner v. Commonwealth*, Record No. 1070-16-3 (April 3, 2018) (slip op. at 7). For that reason, we will consider the Commonwealth's argument.

In the seminal *Miranda* case, the Supreme Court of the United States held that a person "taken into custody or otherwise deprived of his freedom of action in any significant way" must be given four warnings of his constitutional rights as a prerequisite to the admissibility of any statements he might make in response to any questioning by law enforcement officers. 384 U.S. at 444, 476. Whether the circumstances of the "carport interview" were such as to require *Miranda* warnings is a mixed question of law and fact. On appeal, we review such questions de novo but defer to the fact-finder's findings of historical fact unless they are plainly wrong or without evidence to support them. *Hicks v. Commonwealth*, 281 Va. 353, 359 (2011). In accordance with familiar principles of appellate review, we also view the evidence in the light most favorable to the prevailing party, here the Commonwealth, together with all inferences that may reasonably be drawn from it. *Id.*

The trial judge, who alone had the opportunity to observe and hear the witnesses on direct and cross-examination and to weigh their credibility, made an express finding that Spinner was not "in custody" on August 5.

> The ultimate inquiry into whether an individual is subject to custodial interrogation is simply whether there is a formal arrest or restraint on freedom of movement of the degree associated with formal arrest.

*Taylor v. Commonwealth*, 2016 Va. App. LEXIS 239, at *13 (Sept. 13, 2016) (unpublished) (quoting in part from *California v. Beheler,* 463 U.S. 1121, 1125 (1983)) (alterations omitted).

7

Viewed in the light most favorable to the Commonwealth and with the benefit of all inferences that may reasonably be drawn from it, the evidence supports the conclusion that Spinner was not deprived of his freedom of action in any significant way until his arrest on August 7. We therefore cannot say that the trial court's finding was plainly wrong or without evidence to support it. We therefore affirm the trial court's holding that no *Miranda* warnings were required on August 5.

2. Sufficiency of *Miranda* Warnings

We address this question because Spinner contends that the *Miranda* warnings given to him on August 5 were constitutionally defective, that the defect tainted all subsequent warnings and that any statements he thereafter made in response to police questions were "fruit of the poisonous tree" and inadmissible in evidence. If Spinner's contention is correct, the trial court erred in admitting any statement he made when he was in custody after August 5.

*Miranda* prescribes that prior to questioning by law-enforcement officers, a suspect in custody must be given four "now-familiar" warnings: (1) that he has the right to remain silent, (2) that anything he says can be used against him in court, (3) that he has the right to the presence of an attorney, and (4) that if he cannot afford an attorney, one will be appointed for him if he so desires. *Florida v. Powell*, 559 U.S. 50, 59-60 (2010).

The Supreme Court has never prescribed to precise words that must be used in conveying the *Miranda* warnings to a suspect. No "talismanic incantation" is required. Warnings expressed in language that is a "fully effective equivalent" of the warnings expressed in *Miranda* will suffice. *California v. Prysock*, 453 U.S. 355, 359-60 (1981). Our inquiry is therefore whether Investigator Milnor's "caveat": "if you are charged with a crime," of which Spinner

8

complains, destroys the functional equivalence of Milnor's warnings to those required under the *Miranda* line of constitutional case authority.

Spinner relies on *Prysock*, where the Supreme Court considered a *Miranda* warning that told a suspect: "you have the right to have a lawyer appointed to represent you at no cost to yourself." *Id*. at 357. The Court held that there is no "rigidity in the form of the required warnings," *id.* at 359, which need only provide the *Miranda* components or "their equivalent." *Id.* at 360. While the Court suggested in passing that a warning may be insufficient if it implies that the right to counsel applies only if the individual is "charged" or only when he appears in court, *id.*, it found on the facts of the case before it that the advice given in *Prysock* was not "linked to a future point in time after police interrogation," *id.*, and thus there was no constitutional error in the warnings given and the California courts' overreading of the requirements of *Miranda* was reversed. *Id.* at 361-62.

Eight years later, in *Duckworth v. Eagan*, 492 U.S. 195 (1989), the Supreme Court reversed a decision of the United States Court of Appeals for the Seventh Circuit for having erred in extending the language in *Prysock*. The *Miranda* warning given to the suspect in *Duckworth* was as follows:

> Before we ask you any questions, you must understand your rights. You have the right to remain silent. Anything you say can be used against you in court. You have a right to talk to a lawyer for advice before we ask you any questions, and to have him with you during questioning. You have this right to the advice and presence of a lawyer even if you cannot afford to hire one. We have no way of giving you a lawyer, but one will be appointed for you, if you wish, if and when you go to court. If you wish to answer questions now without a lawyer present, you have the right to stop answering questions at any time. You also have the right to stop answering at any time until you've talked to a lawyer.

*Duckworth*, 492 U.S. at 198. The Court held that this warning "touched all the bases" in *Miranda*. *Id.* at 203. The "if and when you go to court" phrase anticipated a question any

9

indigent suspect might be expected to ask under police interrogation:  "*when* will he obtain

counsel?"  *Id.* at 204.  Because a police station cannot furnish counsel on call, the answer

depends on state law.  Under the state law applicable in *Duckworth*, the phrase quoted above was

accurate.  Here, Milnor's "caveat" is the same.  As the Court of Appeals noted, it accurately

describes the Virginia procedure for the appointment of counsel required by Code §§ 19.2-157 to

19.2-160.

In approving the warnings given in *Duckworth*, the Supreme Court held that *Miranda*

requires "only that the suspect be informed, as here, that he has a right to an attorney before and

during questioning and that an attorney would be appointed for him if he could not afford one."

*Id.* at 204.  We hold that the warnings given to Spinner, including Investigator Milnor's "caveat,"

meet those requirements and were a fully effective equivalent of the warnings required by

*Miranda*.

### III.  Conclusion

For the reasons stated above, we conclude that the trial court did not err in denying

Spinner's motion to suppress evidence and that the Court of Appeals correctly affirmed the

convictions.  Accordingly, we will affirm the judgment of the Court of Appeals.

*Affirmed*.