COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Malveaux and Frucci
Argued by videoconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
v.        Record No. 0737-25-1          JUDGE RANDOLPH A. BEALES
OCTOBER 14, 2025

RONNIE D. CHURCH


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jamilah D. LeCruise, Judge

John A. Fisher, Assistant Attorney General (Jason S. Miyares,
Attorney General; S. Hallie Hovey-Murray, Assistant Attorney
General, on briefs), for appellant.

Samantha Offutt Thames, Senior Appellate Attorney (Lauren E.
Brice, Assistant Public Defender; Virginia Indigent Defense
Commission, on brief), for appellee.

Amici Curiae: Electronic Frontier Foundation, National
Association of Criminal Defense Lawyers, American Civil
Liberties Union, and American Civil Liberties Union of Virginia
(Jennifer Lynch; Sidney W. Thaxter; Elizabeth Franklin-Best;
Matthew W. Callahan, on brief), for appellee.

Amicus Curiae: People's Coalition (Ruby Cherian; Maisie
Osteen; Alex Kornya; Legal Aid Justice Center, on brief), for
appellee.


The issue before this Court in this pretrial appeal under Code § 19.2-398(A)(2) is whether

a police officer must obtain a search warrant before accessing information in the City of

Norfolk's Flock Automated License Plate Reader (ALPR) system. The Commonwealth appeals,

arguing that the circuit court erred in ruling that a search warrant was required and in granting

Church's motion to suppress statements he made to a Norfolk police officer about his route of

_____

* This opinion is not designated for publication. See Code § 17.1-413(A).

travel on January 25, 2024. Church argues that the circuit court ruled correctly in suppressing certain of his statements to the police.

## I. BACKGROUND

On January 25, 2024, a woman Ronnie Church knew went into a Norfolk police station, claiming he had committed the crimes of attempted rape, abduction, and domestic assault. When then questioned about her allegations by Norfolk Police Sergeant J.E. Myers, Church said that he had gone to the woman's home but that no altercation had taken place. According to Church, they went together to a car wash, and the woman left him there. He said he then got his car from the woman's house and drove to his residence. Several persons, however, saw him driving in the vicinity of the police station, but he denied being in that area. Sergeant Myers believed Church was looking for the woman when he drove by the police station and that his conduct showed Church's "guilty mind." He also thought Church was not being truthful about the route he said he had driven from the woman's house.

In January 2024, there were 172 Flock cameras positioned at major roadways and intersections in Norfolk. The cameras capture images of license plates as vehicles pass by. The images are saved in a searchable website database for 30 days and may be accessed by a Norfolk police officer to obtain information pertinent to a crime being investigated.

Before interviewing Church, Myers used the license plate and description of Church's vehicle, which had been given to him, to obtain information from the Flock system. Sergeant Myers followed police department protocol in accessing the Flock database and used the information he obtained to investigate the charges against Church. No Flock images showed Church's vehicle passing by the intersection where Church said he had turned. Three Flock images showed Church traveling in a different direction between 12:05 p.m. and 12:11 p.m.

When Sergeant Myers confronted Church with this information, Church said that he may have made a U-turn near the police station.

Church moved to suppress the statements he made to the police, arguing that using the Flock system to track his vehicle violated the Fourth Amendment. Relying on a prior case in Norfolk Circuit Court that she had decided on the same issue (*Bell v. Commonwealth*, 113 Va. Cir. 316 (Norfolk Cir. 2024)),[1] the circuit court judge ruled that the police should have obtained a search warrant before "us[ing] the FLOCK system." The circuit court then suppressed statements Church made about his driving route but did not suppress other statements he made that were unrelated to use of the Flock system and that are not at issue in this appeal.

## II.  ANALYSIS

### A.  Standard of Review

The Commonwealth contends that the circuit court erred by granting Church's motion to suppress statements he made to Sergeant Myers about his route of travel on January 25, 2024. Because the Commonwealth is the appellant, and Church prevailed below in the circuit court, this Court must view the facts in the light most favorable to Church and grant him all reasonable inferences that flow from the evidence. *See Commonwealth v. Grimstead*, 12 Va. App. 1066, 1067 (1991). The circuit court's factual findings are entitled to deference unless they are plainly wrong or lack supporting evidence. *See Cantrell v. Commonwealth*, 65 Va. App. 53, 56 (2015). However, assessing whether the Fourth Amendment was violated is a mixed question of law and fact, and the ultimate legal question of whether the Fourth Amendment was violated is reviewed

---

[1] In *Bell*, the circuit court held that "the collection and storage of license plate and location information by the FLOCK system" required a warrant to access that system because the system "collects and records" data about a vehicle's movements in a manner "akin to cellular telephones." *Bell*, 113 Va. Cir. at 319.

de novo. *See Hicks v. Commonwealth*, 281 Va. 353, 359 (2011); *Baskerville v. Commonwealth*, 76 Va. App. 673, 684 (2023).

### B. Whether Accessing the Flock Database was a Search Prohibited by the Fourth Amendment

It is well established that "[t]he Fourth Amendment prohibits unreasonable searches and seizures." *Collins v. Commonwealth*, 297 Va. 207, 212 (2019). The "basic purpose of this Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara v. Municipal Court of San Francisco*, 387 U.S. 523, 528 (1967). Therefore, a search without a warrant is "presumptively unreasonable." *Bryant v. Commonwealth*, 72 Va. App. 179, 187-88 (2020) (quoting *Glenn v. Commonwealth*, 275 Va. 123, 130 (2008)). But the linchpin of analyzing a Fourth Amendment question is whether there is a reasonable expectation of privacy in the information obtained. *See Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

A person driving his vehicle on a public street with his license plate in plain view has no reasonable expectation of privacy that his vehicle and license plate will not be seen by other persons, including law enforcement officers. *See United States v. Knotts*, 460 U.S. 276, 281 (1983) (holding that monitoring a beeper that had been placed in a drum of chemicals being transported by vehicle did not violate the Fourth Amendment). In the case now before us, as in *Knotts*, the Flock cameras "'augment[ed]' visual surveillance" but did not constitute a search because "the movements of the vehicle . . . had been 'voluntarily conveyed to anyone who wanted to look.'" *Carpenter v. United States*, 585 U.S. 296, 306 (2018) (quoting *Knotts*, 460 U.S. at 281). Thus, as the Commonwealth argues, Sergeant Myers did not have to obtain a warrant to access the Flock database because he was merely requesting information in which Church did not have a reasonable expectation of privacy.

Church argues that the 172 Flock cameras in use in Norfolk provide a "wide scan" of any driver's movements at any time and can track a vehicle throughout the city. He contends, therefore, that the circuit court was correct in holding that a query to the Flock database is a "search" under the Fourth Amendment, for which the police should have obtained a warrant before accessing any information. He relies on *Carpenter* and *Leaders of a Beautiful Struggle v. Baltimore Police Department*, 2 F.4th 330 (4th Cir. 2021) (en banc). However, the situations in those cases are significantly different than that now before us in this appeal.

The issue in *Carpenter* was whether the government was required to obtain a search warrant before acquiring "wireless carrier cell-site records [that] reveal[ed] the location of Carpenter's cell phone whenever it made or received calls." *Carpenter*, 585 U.S. at 306. The records included 127 days of Carpenter's movements, which averaged 101 data points per day. *Id.* at 302. The Supreme Court concluded that using cell phone towers to track an individual's movements continuously over an extended period of time "provides an all-encompassing record of [his] whereabouts." *Id.* at 311. Because "[a] cell phone faithfully follows its owner beyond public thoroughfares," the "time-stamped data" collected by cell towers creates "an intimate window into a person's life," revealing both his movements and his associations. *Id.* Furthermore, the Court noted that location data was retained for five years. *Id.* at 312. The Court held that using cell tower location data to create and maintain a comprehensive chronicle of a person's movements over a significant period of time invaded that person's reasonable expectation of privacy. *Id.* at 311, 313. Thus, accessing the data was a search within the meaning of the Fourth Amendment and required a search warrant. *Id.* at 316.

The issue in *Beautiful Struggle* was whether using an aerial surveillance program to track vehicles and individuals as they went from place to place during the day was pervasive surveillance that required a search warrant. The cameras were operated from the air twelve

hours a day—only during daylight—and covered ninety percent of the city. 2 F.4th at 334. The data was transmitted to "ground stations" where system staff analyzed it in regard to certain violent crimes and prepared reports for the police department. *Id.* People and vehicles were visible as "blurred dots or blobs." *Id.* The data was retained for forty-five days. *Id.* The Fourth Circuit found that the surveillance system invaded a person's reasonable expectation of privacy regarding his movements because its extensive tracking of city residents revealed "intimate details through habits and patterns." *Id.* at 341. The court applied *Carpenter* in holding that a search warrant was required to access the system. *Id.*

In Church's case, the 172 Flock cameras in use in Norfolk are not as intrusive as cell towers and aerial surveillance equipment. The camera images are of vehicles, not persons, and the only information collected—license plates and physical characteristics of the vehicle—is already publicly viewable to anyone who sees the vehicle on the street. *See generally Neal v. Fairfax Cnty. Police Dep't*, 299 Va. 253, 269 (2020) (holding that the ALPR camera database (similar to the Flock system) did not violate the Government Data Collection and Dissemination Practices Act, Code §§ 2.2-3801 through -3809, because it did not contain "identifying particulars" about individuals). The data in the Flock system is only kept for thirty days.

Sergeant Myers obtained three images that were taken during approximately seven minutes of Church's drive and showed a short portion of his route. The police did not continuously monitor his travels around the city. The collected Flock data did not create an "intimate window" of Church's overall movements and associations. Unlike in *Carpenter* and *Beautiful Struggle*, the Flock system provides only short-term monitoring of a vehicle's movements on public thoroughfares. It is not "a detailed chronicle of a person's physical presence compiled every day, every moment, over several years." *Carpenter*, 585 U.S. at 315. Because the Flock system simply took pictures of the license plate and Church's vehicle as he

drove it down public thoroughfares in the City of Norfolk, the circuit court erred in ruling that a search warrant was required for police to access the Flock system.

The decision in *United States v. Martin*, 753 F. Supp. 3d 454 (E.D. Va. 2024), is instructive (although not binding on this Court) as the facts are similar to this case. The United States District Court for the Eastern District of Virginia held in *Martin* that police officers in Richmond and Chesterfield County did not violate any reasonable expectation of privacy by using information obtained from the Flock system in their investigation of the defendant.[2] *Id.* at 476. The court noted the limited number of Flock cameras in the Richmond metropolitan area— 188 owned by both public and private entities. *Id.* at 458, 476. Also, in *Martin*, out of 2,500 photographs taken of vehicles in a 30-day period, only three were of the defendant's vehicle. *Id.* at 476. The court in *Martin* thus distinguished *Carpenter* because the cell tower information in *Carpenter* provided a much more detailed and extensive record of the defendant's activities, which intruded upon an individual's reasonable expectation of privacy. *Id.* at 471-73. The court also distinguished the Fourth Circuit's decision in *Beautiful Struggle* on similar grounds. *Id.*

The circuit court here further erred in speculating about hypothetical, potential misuse of the Flock system rather than basing its ruling on the specific facts of this case. The applicable constitutional standard under *Katz* and *Carpenter* "require[s] courts to consider the facts of the cases at hand to determine whether warrantless access to . . . data violates individuals' reasonable expectations of privacy—not whether it will do so in the future." *Martin*, 753 F. Supp. 3d at 473 n.16 (criticizing the *Bell* decision for its focus on "the court's fears about 'the many ways in which [Flock's system] could be abused' in the future" (alteration in original)). Similarly, in this

---

[2] Other federal district courts have made similar rulings. *See, e.g., United States v. Jackson*, 2025 U.S. Dist. LEXIS 101960 (D. Kans. May 29, 2025); *United States v. Cooper*, 2025 U.S. Dist. LEXIS 1466 (E.D. La. Jan. 6, 2025); *United States v. Sturdivant*, 2025 U.S. Dist. LEXIS 109054 (N.D. Ohio June 9, 2025); *United States v. Brown*, 2025 U.S. Dist. LEXIS 164367 (W.D. Okla. Aug. 25, 2025).

case, the possibility that someday the Flock system might be improperly used was not the question before the circuit court, nor is it the question before this Court. For all of the foregoing reasons, the circuit court erred in granting the motion to suppress.

## III. CONCLUSION

In short, because the Flock system simply took pictures of the license plate and Church's vehicle as he drove it down public thoroughfares in the City of Norfolk, the circuit court erred in ruling that a search warrant was required for police to access the Flock system. Consequently, we reverse the circuit court's ruling that granted Church's motion to suppress, and we remand the case for a trial consistent with this opinion.

*Reversed and remanded.*