COURT OF APPEALS OF VIRGINIA

Present:   Judges Fulton, Lorish and White
Argued at Norfolk, Virginia


ANTWAN DEANGELO BARROW, SOMETIMES KNOWN AS
  ANTWONNE D. BARROW
                                                        OPINION BY
v.      Record No. 0769-23-1                  JUDGE JUNIUS P. FULTON, III
                                                       AUGUST 6, 2024
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
                          Marjorie A. Taylor Arrington, Judge

                Michelle C. F. Derrico, Senior Assistant Public Defender (Virginia
                Indigent Defense Commission, on briefs), for appellant.

                Kelly L. Sturman, Assistant Attorney General (Jason S. Miyares,
                Attorney General, on briefs), for appellee.


        Antwonne D. Barrow appeals the trial court's decision to find him in violation of his

probation, revoke his suspended sentence of four years and six months, and sentence him to a period

of one year and six months' active time, resuspending three years of that sentence, thereafter placing

him on supervised probation for two additional years.  Barrow argues that the trial court abused its

sentencing discretion in ordering him to serve one year and six months of active incarceration.

Barrow also argues that the trial court did not have the legal authority to resuspend the remaining

three years of his sentence and place him on probation for two years upon his release.  For the

following reasons, we affirm in part and reverse in part.

                                         BACKGROUND

        "In accordance with familiar principles of appellate review, the facts will be stated in

the light most favorable to the Commonwealth, [as] the prevailing party at trial."  *Griffin v.*

*Commonwealth*, 80 Va. App. 84, 87 (2024) (alteration in original) (quoting *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018)). "This principle requires us to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" *Id.* at 87-88 (quoting *Kelley v. Commonwealth*, 289 Va. 463, 467-68 (2015)).

In November 2007, Barrow was convicted of unlawful wounding in violation of Code § 18.2-51; possession of a firearm by a convicted felon in violation of Code § 18.2-308.2; misdemeanor assault in violation of Code § 18.2-57; and discharge of a firearm within city limits in violation of Chesapeake local ordinance 46-42. Barrow was subsequently sentenced on June 17, 2008, to five years in prison, with four years suspended, for the unlawful wounding; five years, with three years suspended, on the felon in possession of a firearm; six months in jail on the misdemeanor assault; and 30 days on the discharge of a firearm conviction. As a condition of the suspended sentences, Barrow was ordered to comply with supervised probation for an indeterminate period of time and directed to complete an anger management program and to pay $5,484.85 in restitution.

Barrow served the active period of incarceration and was released on supervised probation. In April 2015, the trial court found that Barrow violated the terms of his probation and revoked the remaining seven years of Barrow's suspended sentence, thereafter resuspending six years and six months for an active sentence of six months. Barrow served the active time and was again released on probation. When placing him on probation for the second time, the trial court set the length of the probation "[f]or an indeterminate period, a minimum of two (2) years supervised, to be released thereafter in the discretion of the Probation Officer upon successful completion of the terms of probation." The trial court also required that Barrow continue to make restitution payments. Thereafter, in March 2017, the trial court found that Barrow had once again violated the terms of probation and revoked Barrow's remaining suspended sentence

of six years and six months, thereafter ordering Barrow to serve two years of active time, and resuspending the remaining four years and six months of Barrow's sentence. The trial court again placed Barrow on probation "[c]ontinued [u]nder [the] [s]ame [c]onditions." The trial court's order expressly ordered that the sentence was suspended "on the same conditions as contained in the previous sentencing order."

In August 2022, Barrow's probation officer filed a major violation report with the trial court alleging violations of Conditions 4[1] and 10[2] of his probation. At the subsequent revocation hearing, Barrow's probation officer, Valerie Manley, testified about Barrow's conduct while on probation. She testified that Barrow was assigned to her supervision on February 25, 2022. She testified that as soon as she took over his supervision, "there were always conflicts" regarding where Barrow was living and she could never verify his home address or home contact phone number. Initially, he had given her an address. However, when Manley went to the address she had for Barrow on file, he was not there. Another individual answered the door and stated that Barrow did not live there. Manley testified that "at some point" Barrow let her know that he was no longer living at that address, but that he had never provided her with the address he was moving to. Manley clarified that she had not given him permission to move to a new address. Given these circumstances, Manley had problems communicating with Barrow regularly and "getting [Barrow] into appointments or even doing a home contact." Despite those difficulties, Manley testified that Barrow showed up to his prior appointments "[f]or the most part." They

---

[1] The nature of Barrow's Condition 4 violation was his "fail[ure] to report for his scheduled probation appointment" on July 22, 2022.

[2] The nature of Barrow's Condition 10 violation was his failure to provide his current living address to his probation officer. Further, Barrow was arrested in Travis County, Texas on July 23, 2022.

scheduled remote telephone visits instead of in-person visits. But then on July 22, 2022, he did not answer Manley's phone call.

After Barrow missed his appointment, Manley "did a records check" and discovered that Barrow was arrested in Travis County Texas on July 23, 2022. Manley testified that even after Barrow's release from custody in Texas, he did not report to her.

Barrow testified on his own behalf. He testified that he was employed as a crane operator for CBS Coastal and PreCast Systems. He testified that he was informed by his employer in early July that he was "being sent to Texas for work." Barrow testified that he knew he needed to receive his probation officer's permission in order to leave Virginia. Barrow's testimony was that he spoke with Manley over the phone and that she gave him permission to go to Texas to work. Further, he testified that Officer Manley told him that she was going to "count that [phone] visit" as their July meeting. Barrow intended to stay in Texas for three weeks to work, then return to Virginia. However, he was arrested in Texas and held in custody on those charges for nearly eight months. Barrow testified that those charges were ultimately dismissed and that he immediately returned to Virginia via bus. Upon his return to Virginia, Barrow testified that he went to visit his family, whereupon he learned that he had an outstanding capias, based on his alleged probation violation. The Commonwealth conceded that from the time he returned to Virginia and turned himself in to the authorities, he had been held in custody.

Barrow's counsel also recalled Manley as a witness. Manley clarified that the last time the two had spoken was in May of 2022 before Barrow missed the July appointment and before his subsequent arrest for his probation violation. During that conversation, Barrow stated that he was employed by Lime, the scooter company, charging their scooters. The two never spoke again after that. Manley also testified Barrow never spoke with her about working in Texas and

- 4 -

that she never gave him permission to leave the state, nor would she, as probation officers do not have such authority without approval from her supervisor and chief of probation.

The trial court found that Barrow had violated the terms of his probation and revoked his suspended sentence of four years and six months. The trial court sentenced Barrow to one year and six months of active incarceration with three years resuspended. In making its sentencing determination, the trial court commented that:

> You know, the problem is, sir, is based on the evidence, you—specifically your testimony, you're really not suitable for probation, which means you deserve all of your time back because you are not suitable. I put you back on probation and, quite frankly, based on what I've heard here in court today, I find that you don't have a lot of respect, certainly not for your probation officer, and really, I don't find that you have a whole lot for the Court.

Again, the trial court noted that Barrow's sentence would be suspended "on the same conditions as contained in the previous sentencing order." Regarding the length of the probation, the trial court also imposed a new period of probation, not to exceed two years, upon Barrow's release. The trial court did not expressly require Barrow to pay any restitution. Barrow timely appealed.

ANALYSIS

Barrow challenges both the trial court's discretion in imposing an active period of incarceration of one year and six months, as well as its authority to resuspend the remaining three years of his sentence and place him on supervised probation for an additional two years, upon his release.

I. *The trial court did not abuse its discretion in ordering Barrow to serve one year and six months of active time.*

Appellate courts review the reasonableness of a trial court's sentence for an abuse of discretion. *Minh Duy Du v. Commonwealth*, 292 Va. 555, 564 (2016). The Supreme Court has

observed that "[c]riminal sentencing decisions are among the most difficult judgment calls trial judges face." *Id.* at 563. Because "this task is so difficult it must rest heavily on judges closest to the facts of the case." *Id.* This exercise of discretion presupposes "that, for some decisions, conscientious jurists could reach different conclusions based on exactly the same facts—yet still remain entirely reasonable." *Id.* at 564. Therefore, it is "[o]nly when reasonable jurists could not differ can [the Court] say an abuse of discretion has occurred." *Id.* (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)). "[O]nce it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018) (quoting *Minh Duy Du*, 292 Va. at 565).

Here, Barrow does not contest that the trial court had the legal authority to sentence him to one year and six months of active time. Instead, Barrow argues that in coming to its sentencing decision, the trial court: 1) failed to consider the mitigating evidence that he introduced, and 2) placed too much weight on Barrow's trip to Texas. Specifically, with regard to mitigating evidence, Barrow points to his "history of [four] years of compliance with probation," his "employ[ment] as a crane operator," and the fact that upon his return to Virginia, Barrow voluntarily turned himself in to authorities. With regard to the trip to Texas, Barrow argues that the trial court "focused exclusively on Mr. Barrow leaving the state without considering why or any other factors."

Neither of these contentions is supported by the record, and Barrow's bald assertions as to what weight the trial court did or did not give to certain evidence is not sufficient, on appeal, to overcome the presumption that the trial court did not err. *See Sheets v. Commonwealth*, 80 Va. App. 706, 718-19 (2024) ("Barring clear evidence to the contrary, [an appellate court] will not presume that a trial court purposefully ignored mitigating factors in blind pursuit of a harsh

- 6 -

sentence." (alteration in original) (quoting *Bassett v. Commonwealth*, 13 Va. App. 580, 584 (1992))); *see also Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000) (It is "within the trial court's purview to weigh any mitigating factors presented by the defendant."). In fact, the trial court noted that Barrow's assertions of a verified residence and that he received permission from his probation officer to go to Texas for work to be lacking credibility as "the evidence is so clear that I don't need to make any further comment." Consequently, the trial court considered and within its discretion, properly rejected Barrow's mitigating evidence because in its estimation, "you're really not suitable for probation, which means you deserve all your time back." Nevertheless, the trial court relented and suspended part of Barrow's sentence.

II. *The trial court had the authority to revoke and reimpose the active portion of Barrow's sentence, but it did not have the authority to place him on probation thereafter.*

While Barrow does not challenge the trial court's legal authority to impose the one year and six months of active time, he does challenge the trial court's authority to resuspend the remaining three years of his sentence and to place him on probation for an additional two years, upon his release. Specifically, Barrow argues that based on the recent 2021 amendments to Virginia's probation regime, the trial court no longer had the authority to suspend his sentence or to place him on an additional period of accompanying supervised probation. We agree.[3]

---

[3] As an initial matter, the Commonwealth argues that Barrow did not timely object to the trial court's imposition of a suspended sentence and two years' supervised probation, thus waiving this assignment of error. The record belies the Commonwealth's contention, as counsel for Barrow clearly objected to any period of suspension and probation. After the trial court found Barrow in violation of his probation, counsel for Barrow addressed the trial court:

> We are asking that he be removed from supervised probation
> regardless of the outcome today. . . . Given our new law that we
> have that came along prior to this violation being issued,
> Mr. Barrow should only be subject to 5 years of supervised
> probation for his offenses.
>
> . . . .

The issues raised in this assignment of error stem from the General Assembly's 2021 amendments to Code § 19.2-303 et seq., which govern the imposition of probation, as well as probation revocation, in criminal cases.[4]  Disposing of this appeal requires us to interpret the contours of the 2021 amendments and their effect on trial courts' authority to order probation in Virginia.  We review such questions de novo.  *See Hamilton v. Commonwealth*, 79 Va. App. 699, 705 (2024).

Historically, probation has been understood as a highly remedial tool for trial courts to utilize in their efforts to rehabilitate offenders, and courts have thus been afforded a great deal of deference when imposing probation in lieu of active incarceration.  *See Burford v. Commonwealth*, 78 Va. App. 170, 185-86 (2023) ("The statutes dealing with probation and suspension are remedial and intended to give the trial court valuable tools to help rehabilitate an offender through the use of probation, suspension of all or part of a sentence, and/or restitution payments." (quoting *Howell v. Commonwealth*, 274 Va. 737, 740 (2007))); *Hunter v. Commonwealth*, 56 Va. App. 582, 587 (2010) ("When coupled with a suspended sentence, probation represents 'an act of grace on the part of the Commonwealth to one who has been

---

> [G]iven that it has been over 10 years, and these are Class 6 felonies on the underlying, Judge, we would argue that he should not be on unsuperv'sed probation.  We'd ask that he be sentenced and that he be released from all forms of probation whether supervised or unsupervised given the sheer age of the offense, of the underlying offense.

Therefore, it is clear that Barrow properly outlined his position and that the trial court had the opportunity to rule on the issue. *See Weidman v. Babcock*, 241 Va. 40, 44 (1991) ("The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented." (citing *Reid v. Baumgardner*, 217 Va. 769, 773 (1977))). Consequently, Barrow adequately preserved his right to appeal.

[4] This statutory scheme provides that Code § 19.2-303 governs trial courts' sentencing authority at the initial sentencing, Code § 19.2-303.1 governs trial courts' authority to impose periods of probation and resuspension at both the initial sentencing and subsequent revocation proceedings, and Code § 19.2-306 governs trial courts' authority at revocation proceedings.

- 8 -

convicted and sentenced to a term of confinement.'" (quoting *Price v. Commonwealth*, 51

Va. App. 443, 448 (2008))). "We have previously 'noted the wide latitude the legislature has

afforded trial courts in fashioning rehabilitative programs for defendants.'" *Hunter*, 56 Va. App.

at 587 (quoting *Nuckoles v. Commonwealth*, 12 Va. App. 1083, 1085 (1991)). However, this

discretion is, from time to time, curbed by the General Assembly through its various enactments

and amendments to the Virginia Code. *See Hannah v. Commonwealth*, 303 Va. 106, 119 (2024)

("Probation is purely a creature of statute, a policy choice shaped by the General Assembly and

administered through the courts. Courts have no inherent authority to suspend the execution of

sentences or to impose probation conditions outside the parameters of the Virginia Code." (citing

*Richardson v. Commonwealth*, 131 Va. 802, 810 (1921))).

Prior to 2021, "the Commonwealth employed a substantially different probation regime

than what was in existence" at the time of Barrow's most recent sentencing on his probation

violation. *See id.* at 117. "Under the laws in force [prior to the 2021 amendments], courts were

free to suspend sentences for 'a reasonable [period of] time, having due regard to the gravity of

the offense, without regard to the maximum period for which the defendant might have been

sentenced.'" *Id.* (quoting Code § 19.2-303.1 (as enacted, 1982)).

In April 2021, the General Assembly amended and reenacted Code

§§ 19.2-303, -303.1, -306. These changes became effective on July 1, 2021.[5] As relevant here,

Code § 19.2-303.1 formerly allowed the court to "fix the period of suspension for a reasonable

---

[5] As the Supreme Court has recently confirmed, these amendments are not retroactive. They will apply prospectively, so long as the conduct giving rise to the probation revocation hearing occurred after the effective date—July 1, 2021. *See Hannah*, 303 Va. at 121-23 (holding that because the offender's violative conduct occurred before July 1, 2021, the trial court was required to apply the law in existence at the time—the pre-amendments probation regime). Here, Barrow's violative conduct occurred in 2022, after the amendments took effect. Therefore, we must look to the new statutory language contained in the amended code sections to determine whether the trial court had the authority to impose the two-year period of suspension and probation.

time, having due regard to the gravity of the offense, without regard to the maximum period for which the defendant might be sentenced." As amended, the period of suspension that a court may order is "up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned." Code § 19.2-303.1. Similarly, amended Code § 19.2-306(C) provides, in pertinent part, that when courts resuspend defendants' sentences, they may do so "for a period up to the statutory maximum for which the defendant might originally have been sentenced to be imprisoned, less any time already served, and may place the defendant upon terms and conditions or probation." Under Code § 19.2-306(C), "court[s] shall measure the period of any suspension of sentence from the date of the entry of the original sentencing order."

Our Court's recent opinion in *Hamilton v. Commonwealth* is illustrative of the proper calculus in determining the appropriate periods of suspension, resuspension, and probation. 79 Va. App. at 699. In 2006, Hamilton was found guilty of three counts of distribution of marijuana for offenses that took place during September 2005. *Id.* at 702. On August 11, 2006, the trial court sentenced Hamilton to fifteen years of imprisonment with fourteen years and four months suspended. *Id.* at 702. Hamilton subsequently violated the terms of his probation three times, between 2008-2017, each of which resulted in a revocation and resuspension of his sentence. *Id.* at 703. Further, in 2014 Hamilton was convicted of an additional charge for robbery.

In 2022, Hamilton's probation officer filed a fourth major violation report alleging that Hamilton had failed to report to probation and that Hamilton had tested positive for Fentanyl in September and November 2021. *Id.* At the probation revocation hearing, Hamilton pleaded guilty and was found to be in violation of his probation.[6] *Id.* Hamilton later moved to set aside

---

[6] The trial court revoked a total of twenty years and ten months of the previously suspended sentence (combining the ten years and ten months of the suspended sentence remaining from the 2006 distribution convictions with the ten years of the suspended sentence

the circuit court's verdict, however, citing the 2021 amendments to Code § 19.2-306 and arguing that "[a]ny sentence for a probation violation after July of 2021 for the . . . Distribut[ion of] Marijuana charge from 2006 could not be imposed after 2016 because the 'period of [suspension and] probation' is limited to the maximum period for which the defendant might have been imprisoned." *Id.* at 703-04. He argued that "[s]ince [he] was sentenced more than ten years ago, [the] court lack[ed] subject matter or active jurisdiction over the defendant and any violation filed after July 1, 2021." *Id.* at 704.

The trial court rejected Hamilton's argument, and it determined that it still had jurisdiction over Hamilton's previously suspended sentence. *Id.* According to the September 20, 2022 revocation order, the trial court revoked a total of twenty years and ten months of the previously suspended sentence (combining the ten years and ten months of the suspended sentence remaining from the 2006 distribution convictions with the ten years of the suspended sentence from the 2014 robbery conviction), and it then resuspended a total of eighteen years and six months, giving Hamilton an active sentence of two years and four months. In addition, the trial court ordered the sentence "suspended on the same conditions as contained in the previous sentencing order" of that court "with the following additions or changes: 1. Good behavior. The defendant shall be of good behavior for twenty (20) years." *Id.* The trial court also placed Hamilton on supervised probation for an indeterminate period. *Id.*

First, this Court in *Hamilton* determined that the trial court did, in fact, have jurisdiction over Hamilton's previously suspended sentence, and it did not err in imposing the active sentence, notwithstanding the 2021 amendments. *Id.* at 704-09. In coming to this conclusion, this Court undertook to calculate the maximum period of incarceration for the crimes of

---

from the 2014 robbery conviction), and it then resuspended a total of eighteen years and six months, giving Hamilton an active sentence of two years and four months.

- 11 -

conviction that Hamilton could have been subjected to and the corresponding maximum period of suspension, pursuant to Code § 19.2-303.1. *Id.* at 706-08. In doing so, this Court noted that, though Hamilton was only sentenced to 5 years on each charge, he *could have* been sentenced to 10 years for each offense, and sentenced consecutively to a total of 30 years' imprisonment. *Id.* at 708. Of note, this Court expressly rejected Hamilton's contention that the appropriate calculus required taking the *single* greatest offense and looking to the maximum possible sentence for that lone offense—i.e., ten years for distribution of marijuana, in Hamilton's case. *Id.* at 707-08. Instead, this Court held that the cumulative total of all potential maximum sentences, running consecutively, was the proper standard.

After establishing that the maximum sentence for Hamilton was 30 years, this Court then determined that, based on the new language contained in § 19.2-306, the 30-year maximum period of suspension ran from August 11, 2006—the date of Hamilton's original sentencing— until August 11, 2036. *Id.* at 708. Based on this calculus,[7] as well as the prior orders

---

[7] The *Hamilton* Court also expressly found that the maximum length of the period of suspension is not affected by the amount of active time that the individual spends incarcerated. That Court stated:

> We also note that the trial court's jurisdiction in this case is not changed by the fact that Hamilton has already served a portion of his suspended sentence. Unlike the suspended sentence itself, the period of suspension is not affected by the amount of time that a defendant actively serves in prison. While a trial court must, of course, reduce the remaining time of the suspended sentence as the defendant actively serves that time, the period of suspension does not get reduced as the defendant actively serves these portions of his suspended sentence.

*Hamilton*, 79 Va. App. at 708 (citing Code § 19.2-306(C)).

- 12 -

resuspending Hamilton's sentence, this Court determined that the trial court retained jurisdiction over Hamilton's suspended sentence in 2022 when he subsequently violated his probation again.[8]

Second, this Court in *Hamilton* determined that a portion of the additional period of suspension and probation ordered by the trial court violated the provisions of Code § 19.2-306(C). *Id.* at 709-10. The trial court's sentencing order purported to place Hamilton on good behavior for an additional 20 years, after his release. However, as this Court noted, that time frame would have placed Hamilton on probation beyond August 11, 2036. *Id.* at 710. This plainly violated the new limits that the General Assembly placed on the authority of trial courts in suspending sentences and ordering probation. As the *Hamilton* Court noted, "once [the]

---

[8] In coming to this conclusion, the *Hamilton* Court presupposed the necessity of determining the maximum period of suspension, per Code § 19.2-306, and examined whether the alleged probation violation occurred within that time period. We note that the trial court in *Hamilton may have* had jurisdiction to act in 2022 solely because it acted within the period of suspension that was provided in the prior revocation order from 2014, based on the law at the time that the 2014 order was entered. While the amendments to Code § 19.2-306 limit a trial court as it determines a defendant's period of suspension for probation violations that occur after July 1, 2021, the 2021 amendments have not retroactively changed the periods of suspension for probationers who have had their respective period of suspension set prior to the amendments of Code § 19.2-306. As our Supreme Court has recently stated:

> Even if jurisdictional, Code § 19.2-303.1 would need to have retroactive effect if it were to divest a court of subject matter jurisdiction it already possessed. Stated above, this Court will not infer a statute's retroactive intent unless it is "manifest and plain," and, in this case, "expressly provide[d]" for by the bill. It would be a significant legislative act for the General Assembly to retroactively reopen and adjust every probation order entered prior to July 2021, potentially cutting short probation periods for thousands of probationers. We see no such intent on the face of the statute or the bill, much less one expressly provided.

*Hannah*, 303 Va. at 124 n.7 (alteration in original) (citation omitted). Nevertheless, we accept the rationale above regarding calculating the maximum period of suspension, and apply the same calculus in disposing of the instant case.

- 13 -

period of suspension expires the defendant is no longer subject to having the suspension revoked." *Id.* (quoting *Carbaugh v. Commonwealth*, 19 Va. App. 119, 126 (1994)).[9]

Here, the application of the aforementioned rules is clear: 1) the trial court had the authority, pursuant to the prior 2017 revocation order and the prior revocation regime, to revoke and impose the one year and six months' active incarceration[10]; however, 2) the trial court no longer had the authority to order an additional period of suspension and probation after Barrow's release. This is so because the cumulative maximum penalty which Barrow could have been punished for his unlawful wounding and possession of a firearm offenses was ten years.[11] Barrow was originally sentenced on June 17, 2008. Therefore, any prospective period of suspension would necessarily have run on June 17, 2018.[12] Yet, the trial court's order purports to re-suspend the remainder of Barrow's sentence and place him on an additional two years of

---

[9] We note here the intricate relationship between probation and periods of suspension. While technically two different things, they almost always will work in tandem to accomplish the rehabilitative goals of the sentencing court. *See Hill v. Commonwealth*, 301 Va. 222, 227 (2022) (recognizing the hand-in-glove relationship between probation and periods of suspension "[b]ecause one without the other would be 'vain and useless'" (quoting 2 John Bouvier, A Law Dictionary 144 (6th ed. 1856))).

[10] As noted above, Barrow does not challenge the trial court's authority to revoke his sentence and impose a period of active incarceration.

[11] Both charges carry a maximum of five years' imprisonment.

[12] There is another potential issue lurking here, as the Commonwealth notes that Barrow was convicted of the two felonies each carrying a potential of five-year maximum sentences, as well as a misdemeanor and a local ordinance violation, which each carried a maximum punishment of twelve months in jail. Given that Barrow has fully served the time on the misdemeanor and local ordinance convictions, it is unclear whether we should calculate the maximum sentence he may have received as 10 years, or 10 years and 24 months. However, we need not decide this question, as even if the maximum sentence was 10 years and 24 months, such a period would still have run by June 17, 2020.

supervised probation after his release, notwithstanding the provisions of Code § 19.2-306(C).

This was reversible error.[13]

The Commonwealth advances two arguments against this conclusion. First, the Commonwealth argues that the language contained in Code § 19.2-303, as amended, provides a basis for the trial court's order imposing the two-year period of suspension and supervised probation. Code § 19.2-303 states, in pertinent part: "The court may fix the period of probation for up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned. Any period of supervised probation shall not exceed five years from the release of the defendant from *any active period of incarceration*." (Emphasis added). The Commonwealth argues that the second sentence above provides trial courts the authority to place offenders on an additional five years of supervised probation after every release from incarceration, notwithstanding the rest of the statutory provisions contained in the rest of Code § 19.2-303, as well as the surrounding Code §§ 19.2-303.1 and -306. We decline to endorse such a broad reading of this language, given that Code § 19.2-306 clearly limits the period of suspension and accompanying probation that a trial court may impose.

---

[13] We acknowledge that our holding today has the potential to create a "use-it-or-lose-it" incentive for future trial courts in similar positions. For instance, in a scenario wherein the trial court judge may feel that a defendant deserves some, but not all, of his or her active time and would prefer to suspend the remainder of the original sentence, future trial courts might still opt to impose the full balance of the remaining sentence, given that the period of suspension would be extinguished after the offender's release (as in this case). This is, of course, a policy decision the General Assembly has spoken on, and it is not the role of the judiciary to question the wisdom of the legislature. Instead, we simply interpret and apply the law as written. *See Commonwealth v. Gregory*, 193 Va. 721, 726 (1952) ("We cannot be concerned with the wisdom of legislation legally adopted. 'To declare what the law is, or has been, is a judicial power; to declare what the law shall be is legislative.'"); *see also Montgomery Cnty. v. Va. Dep't of Rail & Pub. Transp.*, 282 Va. 422, 439 (2011) ("Whether an enactment is wise, and matters of policy, are questions for the legislative branch of government, and not the judicial branch." (quoting *Horner v. Dep't of Mental Health, Mental Retardation, & Substance Abuse Servs.*, 268 Va. 187, 193 (2004))).

It is clear from the context of the surrounding code sections that the Commonwealth misconstrues the language cited. The language cited by the Commonwealth is not a *positive* grant of power from the General Assembly authorizing trial courts to order up to a five-year period of supervised probation after every release from incarceration. Instead, this language is actually a *negative* provision designed to *limit* the trial court's authority. The first two sentences of Code § 19.2-303 grant trial courts the authority to suspend the execution or imposition of sentences conditioned upon probation, subject to the maximum limit described earlier. *See* Code § 19.2-303 ("After conviction, . . . the court may suspend imposition of sentence or suspend the sentence in whole or part and in addition may place the defendant on probation under such conditions as the court shall determine . . . . The court may fix the period of probation for up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned."). However, the court's authority to fix the period of supervised probation is further limited by the third sentence, which limits the period of *supervised* probation that the trial court may order. *See id.* ("Any period of *supervised probation* shall not exceed five years from the release of the defendant from any active period of incarceration." (emphasis added)). Therefore, contrary to the Commonwealth's view, this language actually provides an *additional* limitation on trial courts' authority to fix the length of the period of suspension and supervised probation. Further, the Commonwealth's preferred interpretation of the relevant statutes would lead to internally inconsistent results which would be incapable of operation. "[W]e recognize absurdity in only two narrowly defined situations: when 'the law would be internally inconsistent,' and when the law would be 'otherwise incapable of operation.'" *Lucas v. Woody*, 287 Va. 354, 369 (2014) (quoting *Covel v. Town of Vienna*, 280 Va. 151, 158 (2010)). For instance, if defendant's period of suspension had run up until one year shy of the maximum period for which he could be sentenced, and he subsequently violated his probation and was

given active time, the court could suspend the balance conditioned on a new five-year period of supervised probation, thus extending the period of suspension beyond the "maximum period for which the defendant might have been sentenced." This reading would render the amendments to the relevant statutes meaningless. *See May v. R.A. Yancey Lumber Corp.*, 297 Va. 1, 14 (2019) ("This Court 'presume[s] that that every part of a statute has some effect, and [] will not consider any portion meaningless unless absolutely necessary.'" (alterations in original) (quoting *Logan v. City Council*, 275 Va. 483, 493 (2008))).

Second, the Commonwealth argues that in this particular case, the trial court did not err in imposing an additional period of probation and suspension because the terms of Code § 19.2-303 expressly carve out an exception to the limits on the period of suspension when the offender has not paid restitution in full. *See* Code § 19.2-303 ("The limitation on the period of probation shall not apply to the extent that an additional period of probation is necessary . . . if a defendant owes restitution and is still subject to restitution compliance review hearings in accordance with § 19.2-305.1."). While we might be inclined to agree with the Commonwealth in a different case, the Commonwealth failed to offer any evidence at the revocation hearing that Barrow still had an outstanding court-ordered restitution obligation. Our harmless error review is constrained to those cases *where the record supports* affirming the trial court on a different basis.[14]

---

[14] In effect, the Commonwealth's argument here is a "right for the wrong reason" argument. "Under the right result for the wrong reason doctrine, 'it is the settled rule that how[ever] erroneous . . . may be the reasons of the court for its judgment upon the face of the judgment itself, if the judgment be right, it will not be disturbed on account of the reasons.'" *Perry v. Commonwealth*, 280 Va. 572, 579 (2010) (alterations in original) (quoting *Schultz v. Schultz*, 51 Va. (10 Gratt.) 358, 384 (1853)). "[C]ases are only proper for application of the right result for the wrong reason doctrine *when the evidence in the record supports the new argument on appeal, and the development of additional facts is not necessary.*" *Id.* (emphasis added) (citing *Whitehead v. Commonwealth*, 278 Va. 105, 115 (2009)).

The Commonwealth argues that the record contains all of the prior revocation orders entered by the trial court and that we might infer, based on those orders, that Barrow still owes restitution. This argument is unavailing, as the most recent revocation orders simply stated that Barrow was placed on probation "on the same conditions as contained in the previous sentencing order." The record is silent as to whether Barrow satisfied his restitution obligation during his most recent period of probation, and we cannot simply read facts into the record that are not there. Given that the record contains no such evidence to support the Commonwealth's contention on this point, we must reject the Commonwealth's argument.

CONCLUSION

The trial court did not err in sentencing Barrow to one year and six months of active incarceration. However, based on the changes to Virginia's probation regime contained in the 2021 amendments, the trial court no longer had the authority to prospectively order an additional period of suspension or probation. Accordingly, we affirm the trial court's decision in part and reverse in part.

*Affirmed in part, reversed in part, and final judgment.*